Betty J. SWEASY, Appellant,

v.

WAL–MART STORES, INC. # 1269; Honorable Richard M. Joiner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2009–SC–000219–WC.

Supreme Court of Kentucky.

Oct. 29, 2009.

Wayne C. Daub, Louisville, KY, Counsel for Appellant, Betty J. Sweasy.

William Bryan Hubbard, Ward, Hocker & Thornton, PLLC, James Richard Martin, II, Lexington, KY, Counsel for Appellee, Wal–Mart Stores, Inc. # 1269.

## OPINION OF THE COURT

The Workers' Compensation Board reversed an Administrative Law Judge's (ALJ's) decision to award permanent partial disability benefits from the date that the claimant reached maximum medical improvement (MMI), holding that her entitlement began on the date of her injury. The Court of Appeals reversed and reinstated the award, however, having construed KRS 342.730(1)(d) to mean that an award based on a disability rating of fifty percent or less "may or may not begin" when the impairment or disability from an injury arises. Appealing, the claimant argues that there is no justification for the court's interpretation of KRS 342.730(1)(d) and that her permanent disability arose on the date of her injury. We agree; hence, we reverse.

KRS 342.730(1)(b)-(d) entitle a partially disabled worker to permanent income benefits from the date that the permanent impairment or disability that they compensate arises. The amount of impairment remaining at MMI forms the basis for assigning a permanent impairment rating, but the impairment deemed to be permanent at MMI "arises" when a harmful change in the human organism occurs. This claim must be remanded for the entry of an award that begins on the date of the claimant's injury because the evidence compels a finding that her permanent impairment and disability of fifty percent or less arose on that date.

The claimant's work history included jobs as a bank teller and poster, medical records clerk, pharmacy aide and cashier, and insurance claims decoder. She injured her back on November 28, 2005, in the course of her work as a Wal–Mart cashier. She received medical treatment and was taken off work for three days, after which she returned to work processing credit card applications and as a greeter. Both types of work complied with her light-duty restriction. On March 1, 2007, Wal–Mart refused to honor the restriction any longer and terminated her employment.

The claimant sought benefits for permanent total disability. She testified that she considered herself unable to perform any of the jobs that she had performed at Wal–Mart. She also submitted medical evidence concerning the permanent impairment rating and restrictions that the injury caused.

The ALJ awarded TTD benefits from March 1, 2007, through August 24, 2007, during which time the claimant had not reached MMI or a level of improvement that would permit a return to employment.[1] Convinced that she lacked the physical capacity to return to the type of work performed at the time of injury but was only partially disabled, the ALJ awarded the claimant a triple permanent income benefit. The ALJ based the benefit on an 8% permanent impairment rating, which converted under KRS 342.730(1)(b) to a 6.8% disability rating, and enhanced the benefit by a factor of 0.6 due to the claimant's age of 64 at the time of injury. The ALJ ran the benefit period of the award from August 25, 2007. Although the claimant's disability rating entitled her to a 425–week award under KRS 342.730(1)(d), the ALJ terminated benefits on November 28, 2007, due to her eligibility for normal old-age social security retirement as of June 21, 2007.[2]

The claimant's petition for reconsideration argued that the ALJ should have begun her TTD award on the date of injury rather than the date that Wal–Mart terminated her employment. She also argued that nothing entitled the employer to credit for the wages that she received during the period before she was terminated. Af-

ter the ALJ denied the petition, she appealed.

The Board determined that the evidence did not compel a TTD award during the period before the claimant's termination on March 1, 2007, noting that her customary employment included light-duty work. The Board also determined, however, that the ALJ committed a palpable error by failing to award permanent partial disability benefits from the date of injury through March 1, 2007, because the claimant's permanent disability began at the time of the injury. Although acknowledging that she appealed on a different ground, the Board noted that it had both the authority and the duty to determine whether the award conformed to Chapter 342.[3] Thus, it remanded the claim for the entry of a corrected award.

Wal–Mart appealed, questioning both the Board's authority to raise a legal issue *sua sponte* and its decision concerning the date for commencing partial disability benefits. The Court of Appeals affirmed with respect to the first issue but reversed on the second. The sole issue raised in this appeal concerns the date for commencing permanent partial disability benefits.

■ The claimant argues that the Court of Appeals misconstrued KRS 342.730(1)(d), which states, in pertinent part, as follows:

> For permanent partial disability, if an employee has a permanent disability rating of fifty percent (50%) or less as a result of a work-related injury, the compensable permanent partial disability period shall be *four hundred twenty-five (425) weeks*, and *if the permanent dis-*

---

1. KRS 342.0011(11)(a); *Central Kentucky Steel v. Wise*, 19 S.W.3d 657 (Ky.2000).

2. KRS 342.730(4) requires all income benefits to terminate as of the date on which the worker qualifies for normal old-age social se-

curity retirement benefits or as of two years after the injury, whichever occurs last. Two years after November 28, 2005 occurred last.

3. *See* KRS 342.285(2)(c). *See also Whittaker v. Reeder*, 30 S.W.3d 138 (Ky.2000).

*ability rating is greater than fifty percent (50%), the compensable permanent partial disability period shall be five hundred twenty (520) weeks from the date the impairment or disability exceeding fifty percent (50%) arises.* (emphasis added).

Although KRS 342.730(1)(d) states specifically that the compensable period of a disability greater than 50% commences when "the impairment or disability exceeding [50%] arises," it fails to specify when the period of a disability less than 50% commences. Viewing the discrepancy as an expression of legislative intent, the Court of Appeals determined that the period for a disability less than 50% "may or may not begin on the date that the impairment or disability due to an injury arises." Thus, the court found no error in the ALJ's decision to award permanent income benefits from the date that the claimant reached MMI.

Wal–Mart raises two arguments to defend the Court of Appeals' decision. Adopting the court's reasoning, Wal–Mart argues first that KRS 342.730(1)(d) evinces an explicit legislative intent to treat 520–week and 425–week awards differently. In other words, it requires 520–week awards to begin on the date that impairment or disability arises but permits an ALJ to choose to commence a 425–week award at MMI. Wal–Mart bases its second argument on an alternative construction of KRS 342.730(1)(d) to mean that all partial disability awards begin on the date that

the permanent impairment or disability arises. Relying on the definition found in KRS 342.0011(11)(b), the employer argues that permanent partial disability does not arise until an injured worker reaches MMI and receives a permanent impairment rating. Although we agree with the latter construction of KRS 342.730(1)(d), we do not agree that permanent impairment or disability arises at MMI.

The essence of statutory construction is to determine and effectuate legislative intent.[4] A court must look to the legislative policy and purpose of a statute rather than to focus on a single sentence or portion of a sentence.[5] The court must also consider the statute's policy and purpose when determining the meaning of the words that the legislature used.[6] With those principles in mind, we turn to Chapter 342 and more specifically to KRS 342.730(1).

Chapter 342 protects the community's interest by requiring employers to provide compensation for the effects of work-related injuries so that injured workers and their dependents do not become a burden on the community.[7] KRS 342.0011(1) defines an injury as being a work-related traumatic event that is the proximate cause producing a harmful change in the human organism as evidenced by objective medical findings. Impairment is a loss, loss of use, or derangement of a body part, organ system, or organ function; thus, impairment shows that a harmful change

4. *Hale v. Combs,* 30 S.W.3d 146, 151 (Ky. 2000); *City of Louisville v. Helman,* 253 S.W.2d 598, 600 (Ky.1952); *AK Steel Corporation v. Commonwealth,* 87 S.W.3d 15, 17 (Ky. App.2002).

5. *Cabinet for Families and Children v. Cummings,* 163 S.W.3d 425 (Ky.2005); *Cosby v. Com.,* 147 S.W.3d 56 (Ky.2004); *County of*

*Harlan v. Appalachian Regional Healthcare, Inc.,* 85 S.W.3d 607 (Ky.2002).

6. *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.,* 983 S.W.2d 493 (Ky. 1998).

7. *Kentucky Harlan Coal Co. v. Holmes,* 872 S.W.2d 446 (Ky.1994).

in the human organism exists.[8] The post–1996 Workers' Compensation Act deems a traumatic event that causes impairment to cause disability as well.[9]

KRS 342.730(1)(a)-(d) provide income benefits based on the presence of work-related "disability," which is a decrease in the ability to perform work.[10] Impairment and disability may or may not be permanent or rise to a level that warrants permanent income benefits. "Permanent partial disability" refers to "the condition of an employee who, due to an injury, has a permanent disability rating but retains the ability to work."[11] KRS 342.730(1)(b) bases the amount of a partial disability benefit on the permanent disability rating that results from multiplying the permanent impairment rating that an injury causes by the corresponding statutory factor. KRS 342.730(1)(c)1 and 3 provide benefit multipliers based on the worker's lack of physical capacity to perform the type of work performed at the time of the injury, age, and educational level. Consistent with KRS 342.710(1)'s goal of encouraging a return to work, KRS 342.730(1)(c)2 provides a multiplier for those who return to work at the same or a greater wage. It permits them to receive a basic benefit in addition to their wage while working but to receive a double benefit during periods that they are unable to sustain the employment.

This appeal concerns KRS 342.730(1)(d), which provides compensable periods of 425 weeks for disability ratings of 50% or less and of 520 weeks for disability ratings that exceed 50%. KRS 342.730(1)(d)'s failure to specify when the period of a 425–week award begins may be read to imply legislative intent to permit such an award to begin on a date other than when the permanent impairment or disability of 50% or less arises. Yet, mindful of policy and purpose for which KRS 342.730(1)(b)-(e) were enacted, we conclude that the legislature intended no such absurdity.[12] Neither the Court of Appeals nor the employer points to a reasonable basis for an ALJ to commence benefits on a date other than the date that the permanent impairment or disability arises. Perceiving there to be no reasonable basis, we turn to the question of when permanent impairment or disability arises for the purpose of commencing partial disability benefits.

A condition "arises" when it comes into being, begins, or originates.[13] Thus, impairment arises for the purposes of Chapter 342 when work-related trauma produces a harmful change in the human organism. That usually occurs with the trauma but sometimes occurs after a latency period. In either circumstance the authors of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* consider the amount of impairment that *remains* at MMI to be "permanent." The fact that they direct physicians to wait until MMI to assign a permanent impairment rating does not alter the fact that the permanent impairment being measured actually originated with the harmful change. We conclude, therefore, that the compensable period for partial disability begins on the

**8.** See *FEI Installation, Inc. v. Williams,* 214 S.W.3d 313, 318 (Ky.2007).

**9.** *Id.*

**10.** See *Adkins v. R & S Body Co.,* 58 S.W.3d 428 (Ky.2001).

**11.** KRS 342.0011(11)(b).

**12.** See *Bailey v. Reeves,* 662 S.W.2d 832 (Ky. 1984); *Overnite Transportation Co. v. Gaddis,* 793 S.W.2d 129 (Ky.App.1990).

**13.** *Webster's New Twentieth Century Dictionary Unabridged* 101(2d ed. 1977).

date that impairment and disability arise, without regard to the date of MMI, the worker's disability rating, or the compensable period's duration.

The evidence compelled a finding that the claimant's injury produced permanent impairment and disability from the outset. Thus, it also compelled a partial disability award in which the compensable period began on the date of injury. The claim must be remanded for that purpose.

The decision of the Court of Appeals is reversed and this claim is remanded to the ALJ for the entry of a proper award.

All sitting. All concur.