RENDERED: JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0660-WC


CHARLES DAVID MCGEORGE                          APPELLANT


|  | PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NO. WC-13-87035 |


WAL-MART; CHRIS DAVIS; AND
WORKERS' COMPENSATION
BOARD                                           APPELLEES

AND                      NO. 2020-CA-0715-WC

WAL-MART                              CROSS-APPELLANT


|  | CROSS-PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NO. WC-13-87035 |


CHARLES DAVID MCGEORGE;
CHRIS DAVIS; AND WORKERS'
COMPENSATION BOARD                           CROSS-APPELLEES

\*\* \*\* \*\* \*\* \*\*

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE: Charles David McGeorge petitions, and Wal-Mart cross-petitions, for review of the Workers' Compensation Board (Board) opinion entered April 17, 2020, affirming the opinion, award, and order on reopening, and order denying reconsideration, entered October 14, 2019, and November 13, 2019, respectively, by the Administrative Law Judge (ALJ). Following review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On April 13, 2013, McGeorge injured his lumbar spine at L5-S1 while working for Wal-Mart as an order filler. He pursued a workers' compensation claim, and an award of temporary total disability (TTD), permanent partial disability (PPD), and medical benefits was entered on June 30, 2014, based on an 8% impairment rating. The ALJ determined McGeorge was unable to return to the type of work he performed on the date of injury but did not find him to be permanently, totally disabled.

On June 13, 2016, McGeorge moved to reopen his claim, alleging a worsening of his condition and "that his occupational disability has significantly increased and that he is now permanently and totally disabled from any gainful

employment." ROA[1] 573.  On August 24, 2018, following a hearing, the ALJ entered an interlocutory opinion and order finding the spinal fusion surgery at L5-S1 proposed by Dr. Amr O. El-Nagger to be compensable and awarding McGeorge TTD benefits "from the date of the surgery through the date the Plaintiff reaches [maximum medical improvement] or returns to work."  ROA 1224.  McGeorge underwent the surgery on November 16, 2018.  Pre-surgery, McGeorge had back pain with weakness and tingling in his legs and feet; post-surgery, McGeorge's right-sided symptoms resolved, but he still has back pain and occasional tingling and numbness in his left leg and foot.

A final hearing was held on August 21, 2019.  On October 14, 2019, the ALJ entered an opinion, award, and order finding McGeorge sustained an increase of impairment rating of 12%, for a total of 20%.  The ALJ further found that McGeorge is not permanently, totally disabled.  Both Wal-Mart and McGeorge petitioned the ALJ for reconsideration of this order.  Wal-Mart asserted the ALJ erred in awarding increased benefits from the date of reopening instead of the date of surgery, while McGeorge claimed the ALJ erred in not finding him permanently, totally disabled.  On November 13, 2019, the ALJ entered an order denying the parties' requests for reconsideration.  McGeorge appealed to the Board, and Wal-Mart cross-appealed, using the same arguments presented to the

---

[1]  Record on appeal.

ALJ in their respective petitions for reconsideration. On April 17, 2020, the Board

entered its opinion affirming the ALJ. This petition and cross-petition followed.

## STANDARD OF REVIEW

The appropriate standard of review for workers' compensation claims

was summarized in *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866-67

(Ky. App. 2009).

> Appellate review of any workers' compensation
> decision is limited to correction of the ALJ when the ALJ
> has overlooked or misconstrued controlling statutes or
> precedent, or committed an error in assessing the
> evidence so flagrant as to cause gross injustice. *Western
> Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky.
> 1992). Our standard of review differs in regard to
> appeals of an ALJ's decision concerning a question of
> law or a mixed question of law and fact *vis-à-vis* an
> ALJ's decision regarding a question of fact.
>
> The first instance concerns questions of law or
> mixed questions of law and fact. As a reviewing court,
> we are bound neither by an ALJ's decisions on questions
> of law or an ALJ's interpretation and application of the
> law to the facts. In either case, our standard of review is
> *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky.
> App. 2001); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.
> App. 1998). *De novo* review allows appellate courts
> greater latitude in reviewing an ALJ's decision.
> [*Purchase Transp. Servs. v. Estate of Wilson*, 39 S.W.3d
> 816, 817-18 (Ky. 2001); *Uninsured Emps.' Fund v.
> Garland*, 805 S.W.2d 116, 117 (Ky. 1991)].
>
> The second instance concerns questions of fact.
> [Kentucky Revised Statutes (KRS)] 342.285 designates
> the ALJ as finder of fact, and has been construed to mean
> that the factfinder has the sole discretion to determine the

quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); [*McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974)]. Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" *Shields v. Pittsburgh & Midway Coal Mining Co.,* 634 S.W.2d 440, 441 (Ky. App. 1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. [*Medley v. Bd. of Educ., Shelby County*, 168 S.W.3d 398, 406 (Ky. App. 2004)]. Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001).

. . . .

Generally, "arbitrariness" arises when an ALJ renders a decision on less than substantial evidence, fails to afford procedural due process to an affected party, or exceeds her statutory authority. [*K & P Grocery, Inc. v.*

-5-

> *Commonwealth, Cabinet for Health Servs.*, 103 S.W.3d
> 701, 703 (Ky. App. 2002)].

Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994). Our standard of review requires us to show considerable deference to the ALJ and the Board.

## PERMANENT TOTAL DISABILITY

On appeal, McGeorge contends the ALJ failed to define "permanent total disability" and "work[.]" These terms are defined by the Act.[2] "'Permanent total disability' means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" KRS 342.0011(11)(c). "'Work' means providing services to another in return for remuneration on a regular and sustained basis in a competitive economy[.]" KRS 342.0011(34).

Wal-Mart claims the ALJ failed to comply with the law as set forth in *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015). In that case, the Court held:

> an ALJ is required to undertake a five-step analysis in
> order to determine whether a claimant is totally disabled.
> Initially, the ALJ must determine if the claimant suffered

---

[2] KRS Chapter 342, known as the Workers' Compensation Act (Act).

a work-related injury. Here, the parties stipulated that Stumbo suffered a work-related injury; therefore, the ALJ was not required to make that finding. Next, the ALJ must determine what, if any, impairment rating the claimant has. Here, the ALJ listed the various impairment ratings assigned to Stumbo by the physicians. However, the ALJ never found which impairment rating Stumbo actually has. Having failed to determine what impairment rating Stumbo has, the ALJ could not then determine what permanent disability rating Stumbo has. Thus, the ALJ failed to satisfy the second and third steps of the analysis. Next, an ALJ is required to determine that the claimant is unable to perform any type of work. Here, the ALJ attempted to undertake this analysis, but, as noted by the Board and the Court of Appeals, he fell short. An ALJ cannot simply state that he or she has reviewed the evidence and concluded that a claimant lacks the capacity to perform any type of work. The ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled. Such findings are particularly crucial in a case such as this where: part of Stumbo's condition and arguably some of his restrictions are related to his pre-existing antiphospholipid syndrome; Stumbo testified he could perform sedentary work with accommodations; no physician imposed any restrictions that would foreclose Stumbo from performing sedentary work; Stumbo has performed a wide-range of work activity; and Stumbo has obtained 90 hours of college credits. Finally, an ALJ must determine that the total disability is the result of the work injury.

*Id.* at 396-97. McGeorge complains that the ALJ never mentioned the factors to be considered when evaluating the claimant for permanent total disability as set forth in *Stumbo*. Nonetheless, the Board acknowledged that the ALJ appropriately considered those factors even if he did not specifically cite to that case.

-7-

The first step for finding permanent total disability discussed in *Stumbo*, regarding a work-related injury, is undisputed here. The second and third steps concern impairment rating. In the case herein, various doctors offered opinions concerning McGeorge's impairment rating. McGeorge claims there is no discussion or explanation as to why the ALJ relied on the opinions of Dr. Russell L. Travis as opposed to those of Dr. John J. Gilbert regarding his impairment rating. This assertion is not borne out by the record. In his order, the ALJ stated:

> Dr. Travis found Dr. Gilbert's examination to be vague and did not describe which muscles were involved. An examination of the thoracic spine was not recorded and Dr. Travis found no reason to assign an impairment rating to the thoracic spine. Dr. Travis stated McGeorge's prior impairment rating should be subtracted from his current impairment rating and this was not done by Dr. Gilbert.
>
> . . . .
>
> I will not rely on the rating from Dr. Gilbert. First, Dr. Gilbert appears to rate McGeorge, at least in part, on two non-work-related conditions, those to the thoracic spine and at L3-4. Second, Dr. Gilbert's overall exam findings and conclusions are inconsistent with Dr. Travis' findings, my own estimation of McGeorge's credibility and Dr. El-Nagger's post-surgical findings. X-rays and CT scans by Dr. El-Nagger found good placement of hardware. Physical findings include a decrease in pain and symptoms.

ROA 1477, 1480. The ALJ discussed the proffered impairment ratings and specifically noted why he relied upon Dr. Travis's impairment assessment instead

of Dr. Gilbert's. The fourth step requires the ALJ to determine the claimant is unable to perform any type of work. Here, no medical testimony was presented finding McGeorge unable to return to sedentary work. Dr. Travis opined McGeorge could return to medium work, and Dr. Gilbert communicated McGeorge could return to sedentary work. McGeorge relies solely on his own lay-witness testimony, which the ALJ did not find credible, in his attempt to establish that he is unable to perform any type of work. The fifth and final step is inapplicable here because the ALJ did not find McGeorge to be permanently, totally disabled as defined by the Act. The Board found the ALJ's analysis and determination that McGeorge is not permanently, totally disabled was not flawed. The Board further determined the evidence of record did not compel a different result and the ALJ's findings were supported by substantial evidence—namely, the expert testimony of Dr. Travis. We agree and, thus, affirm.

## INCREASED BENEFITS AWARDED ON REOPENING

On cross-petition, Wal-Mart alleges the ALJ's award of 20% impairment from the date of reopening is erroneous based on KRS 342.125 and the AMA *Guides*.[3] Wal-Mart asserts that, pursuant to the AMA *Guides*, McGeorge only had a herniated disc with a 12% impairment rating on the date of reopening

---

[3] LINDA COCCHIARELLA & GUNNAR B. J. ANDERSON, AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (5th ed. 2000).

and did not have a 20% impairment rating until the fusion surgery on November 16, 2018.

In pertinent part, KRS 342.125(4) simply states, "any change in the amount of compensation shall be ordered only from the date of filing the motion to reopen." The Board opined:

> Based upon the plain reading of this [sic] KRS 342.125(4), we do not believe the ALJ erred as a matter of law. As the ALJ noted, the basis for the motion to reopen was the fact McGeorge's condition had worsened, and he needed surgery. He ultimately had the surgery, and his impairment rating increased. Although it is not directly on point, we find the holding in *Sweasy v. Wal-Mart* [*Stores, Inc.*], 295 S.W.3d 835 (Ky. 2009), analogous and instructive. There the Kentucky Supreme Court determined Sweasy's entitlement to benefits vested at the time of the injury. In this instance, McGeorge's entitlement to enhanced benefits for the worsening of his condition vested on the date he filed the motion to reopen. The increase in impairment was a product of the underlying condition requiring surgery, not necessarily the surgery itself. While the surgery quantified the impairment rating utilized in the calculation, it was not determinative of whether McGeorge's condition has worsened. If that were the case, no injured worker would ever be entitled to an award of PPD benefits prior to surgery being performed, contrary to the holding in *Sweasy*, supra. We additionally find the increase in PPD benefits from the date the motion to reopen was filed is consistent with the holding in [*Bartee v. Univ. Med. Ctr.*, 244 S.W.3d 91] (Ky. 2008). We therefore affirm the ALJ's determination of increased benefits from the date the motion to reopen was filed.

ROA 1557.

-10-

Wal-Mart contends the Board's interpretation of *Sweasy* and *Bartee* is incorrect. However, even if Wal-Mart's contention is correct, neither case is directly on point when compared to the case herein, and we may affirm for any reason supported by the record.[4] In another—more recent—case our Supreme Court held:

> Workers' compensation is a statutory creation. When a claim is reopened, the combined effects of the impairment present at the time of the initial award and the additional impairment present at reopening entitle the injured worker to income benefits based on the whole of his disability from the date of the motion to reopen through the end of the compensable period.

*James T. English Trucking v. Beeler*, 375 S.W.3d 67, 71 (Ky. 2012). In that case, the Court ultimately held "KRS 342.730(1) entitled [the claimant] to receive from the date of his motion to reopen through the end of the compensable period a triple partial disability benefit that was based on all of the impairment resulting from his 2003 injury." *Id*. There, the claimant sustained a knee injury, which was later discovered to be a torn meniscus requiring surgery after the initial award. Here, McGeorge experienced a back injury which was not determined to be a herniated disc requiring surgical fusion until after the initial award. Both cases demonstrate

---

[4] *Sweasy* discussed when to initially award benefits under KRS 342.730 as opposed to when to increase benefits under KRS 342.125 on reopening and an increase in impairment. *Bartee* focused on TTD benefits with the court holding, "the medical dispute did not encompass the TTD issue and . . . KRS 342.125(4) prohibited a TTD award because the claimant filed her motion to reopen after the period of TTD expired." *Bartee*, 244 S.W.3d at 92.

changes of condition arising from the work-related injury sufficient to support reopening and awards of increased benefits based on increased impairment ratings from the date of reopening.

"In any event, it has long been established that a worker's right to benefits for a post-award increase in disability vests when a motion to reopen is filed, without regard to when the increased disability began." *Johnson v. Gans Furniture Indus., Inc.*, 114 S.W.3d 850, 855 (Ky. 2003) (citing *Rex Coal Co. v. Campbell*, 213 Ky. 636, 281 S.W. 1039 (1926)). Therefore, based on the plain language of KRS 342.125(4) and its interpretation by our highest court, we cannot say the ALJ erred in awarding additional benefits from the date of the motion to reopen. Likewise, the Board did not err in affirming the ALJ's award from that date.

## CONCLUSION

For the foregoing reasons, the Opinion of the Workers' Compensation Board is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE:

McKinnley Morgan
London, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT WAL-MART:

Brandon L. Rosen
Huntington, West Virginia