RENDERED:  SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0417-WC

M&M CARTAGE CO., INC.                                     APPELLANT

v.                PETITION FOR REVIEW OF A DECISION
            OF THE WORKERS' COMPENSATION BOARD
                     ACTION NO. WC-10-098764

JAMES GARRISON; HONORABLE
JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  M&M Cartage Co., Inc. (M&M) appeals from an

opinion of the Workers' Compensation Board which affirmed the second amended

opinion and award on remand of the Administrative Law Judge (ALJ) and his subsequent order overruling M&M's petition for reconsideration. Upon review, we affirm.

## Background

This case has a lengthy and complex procedural history. We set forth below those facts which are pertinent to the resolution of this appeal.

### The Work-Related Injury and First Surgery

James Garrison was employed by M&M driving an 18-wheeler on local and over-the-road routes. On December 29, 2009, he suffered a work-related neck injury when a semi-trailer door he was holding jerked up. In May 2010, he underwent a two-level cervical spinal fusion at C5-6 and C6-7, performed by Dr. Wayne Villanueva. Garrison entered into a settlement agreement with M&M which provided for temporary total disability (TTD) benefits and a weekly monetary settlement that was later converted into a lump sum of $17,168.47.

Meanwhile, Garrison continued to experience neck pain. Dr. Villanueva diagnosed a broken screw and non-union at C5-6 but did not recommend any additional surgery. Garrison sought a second opinion from Dr. George Raque, who recommended further surgery to address the broken screw, to re-fuse C5-6 and to extend the fusion to the adjacent level C4-5.

**The Motion to Reopen and Second Surgery**

On October 20, 2016, Garrison filed a motion to reopen based on Dr. Raque's recommendations. M&M disputed the compensability of the proposed surgery and submitted the medical report of Dr. Michael Doyle, who also recommended a fusion from C4-6 and opined that the surgery at C5-6 was related to the 2009 work injury but the problems at C4-5 were not.

On August 3, 2017, the ALJ relied on Dr. Doyle's opinion to determine that the proposed treatment and surgery for C4-5 were not work-related and consequently not compensable, whereas the treatment and surgery for the C5-6 level were work-related and compensable. On September 5, 2017, the ALJ awarded TTD benefits to commence on the date of the surgery.

On October 11, 2017, Dr. Raque re-fused the level C6-7, extended the fusion to C4-6, and performed a C5 corpectomy.

Garrison's symptoms improved but Dr. Raque later determined that the fusion at C5-6 had failed again and that a screw at that level had come out of its proper position. Dr. Raque recommended no further surgical intervention and placed Garrison at maximum medical improvement (MMI) in September 2018.

**The ALJ's Opinion and Award of July 22, 2019**

Following a benefit review conference, the ALJ issued an opinion and award finding that Garrison's cervical condition was compensable at the C5-7

levels but that the condition at C4-5 was not work-related. He found that Garrison was entitled to the TTD benefits already awarded following the second surgery. He also determined that Garrison was not permanently totally disabled (PTD), finding there was insufficient proof that the restrictions recommended by Dr. Robert Sexton were work-related, and that Garrison had not proven that he would be unable to provide services to another for remuneration on a sustained basis in a competitive economy.

Both parties filed petitions for reconsideration. The ALJ issued an order on September 3, 2019, reiterating that M&M was only responsible for the C5-7 levels, that Garrison was entitled to TTD benefits dating from the surgery (but did not provide a termination date), and that Garrison was not permanently disabled. The ALJ assigned Garrison a 29 percent impairment rating.

### The First Opinion of the Board, January 31, 2020

Both parties appealed to the Board, which held that the ALJ failed to perform the necessary evaluation in deciding that Garrison is not permanently totally disabled, as he merely stated that he found Dr. Sexton's opinions to be credible without any further analysis. The Board remanded the case for him to perform the requisite analysis pursuant to *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396 (Ky. 2015), which requires an ALJ to undertake a five-step analysis in order to determine whether a claimant is totally disabled, and *Ira A. Watson Dept.*

-4-

*Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000), which holds that "[a]n analysis of the factors set forth in [Kentucky Revised Statutes] KRS 342.0011(11)(b), (11)(c), and (34) clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury." The Board also stated that any impairment stemming from the C4-5 condition, which was determined not to be work-related, could not be included in any increased award of permanent partial disability (PPD) benefits. Neither party petitioned for review of this opinion of the Board.

**The ALJ's First Amended Opinion and Award of March 31, 2020**

On remand, the ALJ rendered an amended opinion and award, again finding Garrison was not permanently totally disabled. He determined, in reliance on Dr. Sexton's report, that Garrison was entitled to TTD benefits for the second surgery from October 11, 2017, the date of the second surgery, through November 1, 2018, the date of MMI. The ALJ further determined that Garrison's impairment rating increased 4 percent as a result of the second surgery.

The ALJ denied the parties' subsequent motions for reconsideration. The parties then appealed to the Board.

**The Second Opinion of the Board, October 2, 2020**

On appeal to the Board, Garrison argued that the ALJ did not make sufficient findings to support the conclusion that he is not permanently totally

disabled and that he was entitled to TTD benefits from the date of reopening, rather than the date of the second surgery. M&M argued that the ALJ failed to carve out the portion of the increased impairment rating which is attributable to the non-work-related C4-5 fusion.

Upon review, the Board held that the ALJ had failed to set forth adequate findings to support his determination that Garrison was not permanently totally disabled. It further held that a "carve out" was unnecessary because Dr. Sexton's impairment rating, which the ALJ relied upon, related only to the work-related portion of the surgery. The Board remanded for entry of an amended opinion and order finding the increase to be 3 percent, noting that the ALJ based his finding of 4 percent on Dr. Sexton's report, but that Dr. Sexton's report actually found the amount to be 3 percent and the ALJ also found elsewhere that the increase was 3 percent. Neither party appealed from the October 2, 2020 opinion of the Board.

**The ALJ's Third Opinion**

On remand, the ALJ found that Garrison is permanently and totally disabled; determined Garrison's impairment rating increased by 3 percent; and awarded PTD benefits commencing on the date of the motion to reopen, October 20, 2016. M&M filed a petition for reconsideration which the ALJ overruled. It then appealed to the Board.

## The Board's Third Opinion

The Board affirmed the ALJ's second amended opinion and order on remand of November 25, 2020, and the ALJ's order denying the petition for reconsideration. This appeal by M&M followed.

## Standard of Review

As the claimant, Garrison bore the burden of proving the elements of his claim. *Trevino v. Transit Authority of River City*, 569 S.W.3d 400, 403 (Ky. 2019). When, as in this case, the party with the burden of proof is successful before the ALJ, "the issue on appeal is whether substantial evidence supported the ALJ's conclusion. Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018) (internal quotation marks and citations omitted).

Upon review, we "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## Analysis

M&M argues that the ALJ's reversal of his previous finding that Garrison was not permanently totally disabled is arbitrary and capricious. It

contends that an ALJ may not reverse factual findings on the merits in a subsequent opinion, absent a showing of new evidence, fraud, or mistake. M&M relies on *Bowerman v. Black Equipment Co.*, which states: "[A]bsent newly discovered evidence, fraud, or mistake, parties have a reasonable expectation that they may rely on factual findings that have been fully and fairly adjudicated by an ALJ, even when rendered in an interlocutory decision." 297 S.W.3d 858, 868 (Ky. App. 2009).

But the standard is different when, as here, the opinion of the ALJ is vacated by the Board. In its October 2, 2020 opinion, the Board vacated the ALJ's determination that Garrison is not permanently totally disabled and remanded for additional findings. In this situation, "when the Board vacates an ALJ's opinion, it 'nullif[ies] or cancel[s]; make[s] void; invalidate[s]' that opinion. BLACK'S LAW DICTIONARY (10th ed. 2014)." *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 234 (Ky. 2016). In effect, the ALJ's earlier opinion "ceased to exist[.]" *Id.* The ALJ is thereafter

> required to write a new opinion on remand; he cannot, . . . simply supplement his existing opinion with additional findings of fact. In the process of writing that new opinion, there is nothing to prevent the ALJ from entering a different award, nor is there anything to compel the ALJ to enter the same award. By vacating the ALJ's opinion and requiring him to make additional findings, the Board has implicitly authorized him to enter a different award[.]

-8-

*Id.* at 234-35.

Under the foregoing clear precedent, the Board correctly held that the ALJ was not bound by the prior disability determination because that previous award was vacated and remanded by the Board and neither side appealed.

M&M further argues that because the facts underlying the ALJ's ultimate determination of his level of disability had not changed since his earlier opinion, his reversal of the finding regarding permanent total disability based on those same facts was inconsistent and unjustified. But the grounds for the reversal by the Board was the ALJ's application of the wrong legal standard to assessing the facts, not the validity of the facts themselves. The ALJ's findings were sufficient to support his determination that Garrison was permanently totally disabled.

M&M's next argument concerns the ALJ's finding that Garrison was entitled to PTD benefits from the date of reopening, rather than from the date of the surgery a year later. M&M argues that because the ALJ and the Board had previously held that Garrison was not entitled to TTD benefits commencing on the date of reopening, PTD benefits should not have been awarded from that date either.

In addressing this argument, the Board held that the ALJ's award was in accordance with *Sweasy v. Wal-Mart Stores, Inc.*, 295 S.W.3d 835 (Ky. 2009)

which held that entitlement to benefits commenced at the time of the injury. "[T]he impairment deemed to be permanent at MMI 'arises' when a harmful change in the human organism occurs." *Id*. at 836. The Board stated that Garrison's increase in impairment "was a product of the underlying cervical condition requiring surgery, not necessarily the surgery itself."

The Board further held that the ALJ was not bound by his previous determination because the ALJ did not determine Garrison is entitled to PTD benefits commencing on the date of the motion to reopen until the second opinion on remand rendered on November 25, 2020. We agree with the Board that this issue was not *res judicata*, and the language of the statute permits the ALJ to make a fresh determination regarding the commencement date of benefits as part of his reconsidering whether Garrison was entitled to PPD benefits.

Third and finally, M&M argues that the ALJ improperly combined the non-work-related impairment resulting from the non-work-related fusion at C4-5 with the work-related impairment and disability. M&M argues that Garrison's disability stems from both work-related and non-work-related impairments and contends the ALJ should have analyzed and carved out what percentage of the disability is attributable solely to the work-related impairment. It points out that no physician has opined that Garrison's disability is completely attributable to the work injury.

In addressing the issue of the "carve out," the Board repeated the analysis in its opinion of October 2, 2020, which stated there was no support for the suggestion that Dr. Sexton offered any impairment rating for that portion of the second surgery implicating C4-5 (the non-work-related portion of the repair). The Board further noted that M&M did not appeal from the October 2, 2020 opinion and therefore that determination has become the law of the case. In arriving at this conclusion, the Board did not misconstrue the law nor did it err in assessing the evidence. The ALJ's award does not improperly attribute a portion of Garrison's disability to a non-work-related impairment.

For the foregoing reasons, the opinion of the Board affirming the second amended opinion and award on remand and the order overruling the petition for reconsideration are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ann F. Batterton
Thomas M. Edelen
Louisville, Kentucky

BRIEF FOR APPELLEE JAMES GARRISON:

Alan S. Rubin
Louisville, Kentucky