RENDERED:  NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0709-WC

LESLIE LAWRENCE                                                    APPELLANT

|  |  |
|---|---|
| v. | PETITION FOR REVIEW OF A DECISION OF THE WORKERS' COMPENSATION BOARD ACTION NO. WC-14-90651 |

KELLOGG'S; HONORABLE CHRIS
DAVIS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD                                                APPELLEES

OPINION
REVERSING IN PART, AFFIRMING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Leslie Lawrence petitions for review of the Workers'
Compensation Board opinion entered on March 27, 2020, vacating and remanding
the opinion and order entered on August 24, 2018 by Administrative Law Judge
(ALJ) Chris Davis.  Following a review of the record and the law, we reverse in
part, affirm in part, and remand the decision of the Board.

Lawrence began working for Kellogg's in 1977 and worked for the company through his eventual retirement in 2016. Beginning around 1999, Lawrence worked in the shipping and receiving department where he loaded trucks and staged orders using a forklift. On March 11, 2014, Lawrence was walking behind a forklift being operated by a co-worker when the co-worker backed the forklift into him, trapping his right foot under the weight of the machine.

As a result of the accident, Lawrence sustained significant injuries to his right ankle. Lawrence sought treatment from Dr. Kevin Harreld, who diagnosed Lawrence with a fractured right ankle and initially placed his ankle in a cast. Dr. Harreld subsequently performed an open reduction and internal fixation procedure to repair Lawrence's injured ankle. On May 5, 2014, Dr. Harreld noted that Lawrence could return to work with restrictions of sit-down duty only and the ability to elevate his right leg and take breaks as necessary. In September of 2014, Lawrence returned to work for Kellogg's on full duty. Lawrence testified that upon returning to regular duty, his ankle swelled and his back hurt from standing for long periods of time while working.

Lawrence was on full-duty work release until November of 2015 when he returned to Dr. Harreld with complaints of continued ankle pain. At that time, Dr. Harreld gave Lawrence work restrictions to allow him to take breaks at work every two hours as needed to elevate his right leg, ice his ankle, and limit

forklift use to two hours at a time. On January 20, 2016, at Lawrence's request, Dr. Harreld performed an operation to remove the surgically placed hardware from Lawrence's right ankle. Thereafter, on March 1, 2016, Dr. Harreld released Lawrence to return to work at full duty, with the restriction that he could take breaks every two hours to elevate and ice his right ankle. Lawrence testified that he returned to work for two days following the hardware removal surgery but ultimately decided to retire in the spring of 2016:

Counsel: You had a second surgery with Dr. Harreld January 20th of '16. Did you work up until that surgery?

Lawrence: Yes.

Counsel: Okay. Did you return to work after that surgery?

Lawrence: No, ma'am.

Counsel: Okay. Were there a couple days in March of 2016[?]

Lawrence: Yes, I did return for two days, and then I – I had five weeks' vacation scheduled at that time. And during the vacation, me and the wife discussed it and decided that [it] was just too hard to work seven days a week like I had been at that point; so I just decided to go ahead and retire.

We focus on reviewing the evidence and findings relevant to the two issues raised on appeal, whether Lawrence was entitled to permanent total

-3-

disability benefits after he retired, and whether Lawrence was entitled to permanent partial disability benefits for periods that Lawrence returned to work. In resolving these issues, the ALJ considered evidence from Kevin Harreld, M.D., John J. Guarnaschelli, M.D., Craig S. Roberts, M.D., John Larkin, M.D., Robert Tiell, M.A., Luca Conte, Ph.D., and Rick Pounds, M.S., RCEP, FABDA.

On November 4, 2014, Dr. Harreld stated Lawrence had reached maximum medical improvement (MMI) for his right ankle fracture. At this point, Dr. Harreld assigned a 3% impairment rating pursuant to the American Medical Association, *Guides to the Evaluation of Permanent Impairment* (5th ed. 2000). Dr. Harreld believed Lawrence required no further restrictions and could return to work for Kellogg's on full duty. The ALJ considered all of the above-mentioned medical treatment by Dr. Harreld, including the work restrictions he assigned Lawrence on March 1, 2016.

Dr. Guarnaschelli performed an independent medical evaluation (IME) on September 7, 2016. Dr. Guarnaschelli diagnosed Lawrence with a right ankle fracture caused by a work-related injury. He assigned Lawrence a 21% total impairment rating and believed Lawrence would experience difficulty returning to full-time employment without significant ability to sit, rest, and take frequent breaks. Dr. Guarnaschelli further observed that persistent standing or walking would exacerbate the healing process of Lawrence's right ankle fracture.

-4-

Lawrence was examined by Dr. Roberts on February 14, 2018 as part of an additional IME. Dr. Roberts diagnosed a fractured right ankle and noted that he believed the injury was the result of the forklift incident. Dr. Roberts noted that he believed Lawrence reached MMI on October 11, 2014 and assigned him an 8% impairment rating due to his right ankle injury. Further, Dr. Roberts acknowledged that he did not believe Lawrence was capable of returning to any competitive employment on a regular and sustained basis.

Dr. Larkin conducted an IME on Lawrence on April 4, 2018. The physical examination of Lawrence's right ankle showed a reduced range of motion. Dr. Larkin assigned an 8% impairment rating and indicated that he believed Lawrence reached MMI on March 2, 2016. Dr. Larkin further opined that Lawrence could return to the type of work done at the time of his injury.

Tiell conducted a vocational evaluation of Lawrence on December 17, 2016. Tiell reported that Lawrence was considered an older adult and that his ankle injury was a significant deterrent for employability. Tiell defined Lawrence's work for Kellogg's from 1977 through April 2016 as semi-skilled in nature and requiring at least medium exertion. Finally, Tiell noted that he believed Lawrence had a 100% occupational loss due to his ankle injury, and "did not believe Lawrence had skills to transfer into other jobs such as clerical."

Dr. Conte conducted a vocational evaluation of Lawrence on April 12, 2018 in which he performed a review of Lawrence's medical records and administered to Lawrence various vocational skills tests. Dr. Conte reported that Lawrence's test scores indicated the capacity to perform a variety of occupations in the "semi-skilled and unskilled labor market" and that he believed Lawrence has the capacity to acquire additional vocational skills.

On April 17, 2018, Lawrence underwent a functional capacity evaluation performed by Pounds. Pounds reported that testing indicated Lawrence had the ability to do the maximum requirements of a lift truck operator. Further, Pounds opined that Lawrence could perform most of the requirements for heavy exertion occupations.

On August 24, 2018, the ALJ issued an opinion and order concluding that Lawrence was permanently and totally disabled due to his ankle injury. The ALJ extensively reviewed the previous evidence and explained his reasoning as follows:

> I have the [Functional Capacity Evaluation] from Rick Pounds, which states [Lawrence] can work as a lift truck operator. I have the restrictions from Dr. Larkin, which are that [Lawrence] can work in medium duty seated position with some weight bearing and ambulation. These would seem to indicate that [Lawrence] could find jobs within [his] abilities, maybe even return to the type of work done on the date of injury. However, I do not adopt these restrictions.

Rather I adopt the restrictions assigned by the treating physician and surgeon, Dr. Harreld. When Dr. Harreld did finally discharge [Lawrence] after a long course of treatment, including two surgeries, he said that [Lawrence] would need to ice and elevate his right ankle periodically throughout the day.

This restriction alone would render most people totally disabled. Much less a man who has spent his entire professional life, almost 40 years, in factories and shipping departments. It is doubtful that many employers would tolerate this for an extended period. [Lawrence's] high school education does not create sufficient opportunities to overcome this severe restriction nor does his work experience.

While some may seek a more detailed explanation, I doubt many people could envision hiring, on a permanent basis, a 58-year-old man with factor[y] and shipping experience, and a high school education, who had to elevate and ice his ankle every so often.

The ALJ awarded Lawrence permanent total disability benefits at a weekly rate of $481.92 from March 14, 2014 until Lawrence reaches age 70. No mention was made in this opinion as to why the permanent partial disability benefits Lawrence requested for the periods that Lawrence returned to work were not considered or awarded.

Both parties filed petitions for reconsideration. Kellogg's argued the ALJ erred in his determination regarding Dr. Harreld's restrictions and in disregarding Dr. Conte's vocational evaluation. Lawrence argued the ALJ erred in failing to make an award for permanent partial disability benefits. The ALJ

specifically rejected Dr. Conte's opinions, finding them "entirely uncredible" and disagreed that Lawrence had not returned to real work, stating Lawrence's work in the interim was "light duty, but not made up work. He was paid equal or greater wages. He hoped to make a full recovery. His actual disability began as outlined in the Opinion. The Opinion and Award stands."

By opinion entered March 27, 2020, the Board affirmed in part, vacated in part, and remanded. The Board vacated the finding of permanent total disability, determining:

> [T]he ALJ failed to perform the requisite analysis in determining Lawrence was permanently and totally disabled. He merely stated he adopts the restrictions assigned by Dr. Harreld[.]
>
> . . .
>
> We do not believe this is a sufficient analysis as mandated by City of Ashland v. Stumbo, [461 S.W.3d 392 (Ky. 2015)]. The ALJ's opinion does not sufficiently set forth a detailed analysis, properly weighing the evidence of record in determining whether Lawrence will be able to earn income by providing services on a regular and sustained basis in a competitive economy.

The Board affirmed the ALJ's denial of permanent partial disability benefits, explaining that Lawrence failed to cite to any authority for an award of permanent partial disability prior to the award of permanent total disability. The Board also explained that Lawrence received temporary total disability benefits or earned

-8-

equal to or greater wages until he recovered from his second surgery, and "[b]ecause the condition was not at MMI during his return to work, Lawrence would not be entitled to [permanent total disability] benefits while earning full wages." This appeal followed.

A claimant in a workers' compensation action must prove each of the essential elements of his cause of action through "substantial evidence." *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky.App. 1984). Substantial evidence is evidence of relevant consequence having the fitness to induce conviction in the mind of a reasonable person. *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971).

By virtue of statute, the ALJ is the exclusive fact finder, and the determination of the quality, character, and substance of the evidence is left to the sole discretion of the ALJ. Kentucky Revised Statute (KRS) 342.285(1); *see also Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky.App. 2009). An appellate tribunal is required to give considerable deference to an ALJ's findings of fact and cannot set them aside unless the evidence compels a contrary finding. *Miller v. Go Hire Emp. Dev., Inc.*, 473 S.W.3d 621, 629 (Ky.App. 2015). Further, "if the physicians in a case genuinely express medically sound, but differing, opinions as to the severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe." *Jones v. Brasch-Barry General*

*Contractors*, 189 S.W.3d 149, 153 (Ky.App. 2006). Reversal of an ALJ's opinion is only warranted where there was no evidence of substantial probative value to support the ALJ's decision. *Miller*, 473 S.W.3d at 629.

Additionally, our review of a decision of the Workers' Compensation Board is limited to whether "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Regarding proper interpretation of the law or its application to the facts, we are not bound by the decisions of an ALJ or the Board. In either case, the standard of review is *de novo*. *Bowerman*, 297 S.W.3d at 866.

Lawrence argues that the ALJ's findings were sufficient to justify the award for permanent total disability and the Board acted in error by vacating and remanding on this issue. Kellogg's requests that we affirm the Board's decision on the basis that the ALJ failed to establish Lawrence could not work, given ample evidence to the contrary and the fact that Dr. Harreld himself never opined that Lawrence could not work.

Permanent total disability is "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" KRS 342.0011(11)(c). A permanent disability rating is "the permanent impairment

-10-

rating selected by an [ALJ] times the factor set forth in the table that appears at KRS 342.730(1)(b)[.]"  KRS 342.0011(36).

An ALJ must undertake a five-step analysis to determine whether a claimant has a permanent total disability.  *Stumbo*, 461 S.W.3d at 396.  As there is no dispute that steps one, two, three and five were satisfied, we need not review those steps.

The fourth step requires the ALJ to determine whether the claimant is unable to perform any type of work.  *Id.* at 396.  Stated differently, the ALJ in his analysis must weigh the evidence concerning whether the claimant is able to provide services to another, for income, on a regular and sustained basis in a competitive economy.  *McNutt Construction/First General Servs. v. Scott*, 40 S.W.3d 854, 859-860 (Ky. 2001).

To determine whether the claimant has such inability, the ALJ must consider several factors, including "the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact."  *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51-52 (Ky. 2000).  The ALJ must also consider the likelihood that the worker would be able to find work consistently under normal employment conditions, which requires a consideration of whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities.  *Id*.  "An ALJ cannot simply

state that he or she has reviewed the evidence and concluded that a claimant lacks the capacity to perform any type of work. The ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled." *Stumbo*, 461 S.W.3d at 396-97.

The Board vacated the ALJ's decision on the basis of failure to satisfy this factor. We disagree that this was appropriate.

The ALJ considered Lawrence's age, his educational and occupational history, whether his physical restrictions would interfere with his vocational capabilities, and the likelihood that he would be able to find work under normal employment conditions. The ALJ also considered the restrictions assigned by Dr. Harreld and disregarded the restrictions assigned by Rick Pounds and Dr. Larkin.

The ALJ properly determined based on the medical proof that Lawrence would have to spend part of his day seated, would need breaks, and would need the opportunity to ice his ankle throughout the day. The ALJ next determined that Lawrence's age (fifty-eight), work experience (factory and shipping work), and education (a high school diploma) were not sufficient to create other work opportunities for him within his restrictions. The ALJ then determined that it was not realistic to believe that an employer would want to hire an employee

for a factory job where the employee had to take multiple breaks throughout the day to ice his ankle.

This analysis comports with *Stumbo*. It is clear from the ALJ's opinion that he determined that Lawrence would not be a good candidate for a more sedentary position that would fit within his restrictions due to his limited work history, age, and education, and the prospect of Lawrence finding factory work within his restriction was bleak. More extensive findings were not necessary. Therefore, the Board misconstrued what was necessary under *Stumbo* and erred in vacating and remanding for additional findings on this matter because there was evidence of sufficient probative value to support the ALJ's opinion. Accordingly, we reverse the Board's decision vacating and remanding on this issue.

Lawrence argues that the ALJ abused his discretion in failing to award him permanent partial disability benefits during the return-to-work periods and the Board erred in affirming on this issue. In support of his position, Lawrence cites to *Sweasy v. Wal-Mart Stores, Inc.*, 295 S.W.3d 835 (Ky. 2009).

In *Sweasy*, the Kentucky Supreme Court held that the compensable period for a claimant's permanent partial disability begins on the date his impairment and disability arise. *Id*. at 839-40. The Board distinguished *Sweasy* by pointing out that *Sweasy* "[dealt] with the date [on which] an impairment or

disability arises[,]" rather than "the award of [permanent partial disability] benefits prior to a claimant becoming permanently and totally disabled."

Although *Sweasy* mandates that the compensable period begins on the date the claimant's disability arises, it does not require an award for permanent partial disability to commence on the date of the claimant's injury, nor does *Sweasy* require an ALJ to award permanent partial disability benefits. Moreover, Lawrence's argument on appeal has the same flaws as his argument before the Board. Lawrence does not cite to any authority for an award of permanent partial disability prior to the award of permanent total disability. Therefore, we agree that the Board acted correctly in affirming the ALJ's decision on this issue.

Accordingly, we reverse and remand in part the portion of the Board's opinion vacating and remanding the ALJ's opinion for a more detailed analysis of Lawrence's permanent total disability consistent with the analysis in *Stumbo* and affirm in part the Board's opinion affirming the ALJ's refusal to award permanent partial disability benefits during Lawrence's return to work periods.

ALL CONCUR.

BRIEF FOR APPELLANT:    BRIEF FOR APPELLEE:

Stephanie N. Wolfinbarger    Mark R. Bush
Louisville, Kentucky      Clarke D. Cotton
              Ft. Mitchell, Kentucky