RENDERED: MAY 14, 2015
TO BE PUBLISHED



**Supreme Court of Kentucky**

2014-SC-000190-WC

CITY OF ASHLAND                                                                APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                     CASE NO. 2013-CA-000600-WC
WORKERS' COMPENSATION BOARD NO. 10-WC-97308


TAYLOR STUMBO;                                                               APPELLEES
HONORABLE WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


AND                           2014-SC-000212-WC


TAYLOR STUMBO                                                        CROSS-APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                     CASE NO. 2013-CA-000600-WC
WORKERS' COMPENSATION BOARD NO. 10-WC-97308


CITY OF ASHLAND;
HONORABLE WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                        CROSS-APPELLEES


## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

The Administrative Law Judge (the ALJ) determined that Taylor Stumbo

(Stumbo) is permanently totally disabled as a result of a work-related injury.

Stumbo's employer, the City of Ashland (Ashland), appealed to the Workers'

Compensation Board (the Board), and the Board vacated and remanded to the

ALJ for additional findings of fact regarding the extent and duration of

Stumbo's disability. Stumbo filed a petition for review and Ashland filed a

cross-petition for review with the Court of Appeals, which affirmed the Board. Both parties have now appealed to this Court. In its appeal, Ashland argues that there is insufficient evidence to support the ALJ's finding of permanent total disability. In his appeal, Stumbo argues that the ALJ's opinion contains sufficient findings of fact and that the award of permanent total disability is supported by sufficient evidence of substance. Having reviewed the record, we affirm the Court of Appeals.

## I. BACKGROUND.

Stumbo, who was 26 years old at the time of his final hearing and who has completed 90 semester hours at Eastern Kentucky University, suffered a left knee injury on February 1, 2010, when he slipped as he stepped from his dump truck. At the time, Stumbo was working as a waste water operator, a job that required him to perform heavy manual labor. Prior to his injury, Stumbo had worked in retail sales; as a busboy, waiter, and cook; as a security officer; and as a physical therapy technician. Those jobs required Stumbo to perform light to heavy work activity.

Following his injury and a course of conservative treatment, Stumbo underwent arthroscopic surgery on his left knee. Approximately one week after the surgery, Stumbo was admitted to the hospital for treatment of a deep vein thrombosis (DVT) and pulmonary embolism. Those conditions were successfully treated; however, because of a pre-existing underlying condition, antiphospholipid syndrome, a condition that increases blood clotting, Stumbo requires ongoing treatment with Coumadin, a blood thinner. As a result of

2

taking the Coumadin, Stumbo has sought treatment for gastrointestinal problems and nose bleeds.

Stumbo testified that, since the surgery, he has had ongoing left knee and leg pain. In his deposition, Stumbo stated that he could stand for an hour to an hour and a half and that he could walk for approximately two hours. However, at the hearing, Stumbo stated he notices an increase in pain after standing for 15 to 20 minutes and after walking for 30 to 40 minutes. At the hearing, Stumbo also stated that he keeps his leg elevated for two to three hours per day because of his antiphospholipid syndrome. Based solely on his left knee, Stumbo stated he could perform sedentary work; however, because of his antiphospholipid syndrome, he would have to be able to elevate his leg and stand/walk as needed throughout the day. He does not believe he could perform any of his previous jobs because they required too much standing or sitting without a break.

Ashland contested the extent and duration of Stumbo's disability and initially contested the compensability of Stumbo's medical treatment for the DVT, the pulmonary embolism, and the antiphospholipid syndrome. However, at the time of the final hearing, Ashland was only contesting extent and duration and the compensability of Stumbo's treatment for the antiphospholipid syndrome. Stumbo argued that all of his medical conditions and treatment are related to the left knee injury and that he is permanently totally disabled.

3

In support of their positions, Ashland and Stumbo filed numerous medical records and reports. We summarize below those that are relevant.

## A.    David P. Herr, D.O.

Stumbo filed the August 2011 independent medical evaluation report and the June 2012 and August 2012 supplemental reports from Dr. Herr. In his August 2011 report, Dr. Herr noted that Stumbo complained of left knee and leg pain that began after the February 2010 work injury.

Dr. Herr's examination revealed no muscle atrophy, swelling, or instability but crepitus with range of motion testing. Following his examination and review of Stumbo's medical records, Dr. Herr assigned Stumbo a 5% impairment rating and restricted Stumbo from heavy lifting and to carrying no more than 25 pounds. Dr. Herr also stated that Stumbo should avoid standing/walking for more than an hour continuously, squatting, crouching, kneeling, and climbing. Finally, Dr. Herr stated that Stumbo's restrictions would prevent him from returning to the type of work he performed at the time of the injury.

In his supplemental reports, Dr. Herr criticized the conclusions and opinions in the majority of the medical reports filed by Ashland. However, in his August 2012 report, Dr. Herr agreed with the opinions expressed by Dr. Westerfield, in a report filed by Ashland. Dr. Westerfield addressed Stumbo's post-surgery DVT and pulmonary embolism, which he found to be related to the surgery and thus work-related. Dr. Westerfield also addressed Stumbo's

4

antiphospholipid syndrome, which he stated was a pre-existing condition unrelated to the work injury, treatment for which would also not be related.

**B.  Anbu K. Nadar, M.D.**

Stumbo filed the August 2011 independent medical examination report from Dr. Nadar. Stumbo complained to Dr. Nadar of left knee pain and stiffness, and Dr. Nadar's examination revealed no deficits other than slightly decreased range of motion and slightly decreased quadriceps on the left. Dr. Nadar made diagnoses of left knee strain and tibial plateau fracture with DVT, which he related to the work injury. Based on his findings, Dr. Nadar assigned Stumbo a 3% impairment rating and restricted him from prolonged standing, walking, crawling, and kneeling.

**C.  Kevin J. Kulwicki, M.D.**

Stumbo filed the medical records and reports of Dr. Kulwicki, who performed left knee arthroscopic surgery on July 22, 2010. Dr. Kulwicki noted that Stumbo continued to have pain following surgery, and, in June 2011, he assigned Stumbo a 13% impairment rating. We note that Dr. Kulwicki stated that his impairment rating was from the Sixth Edition of the AMA *Guides to the Evaluation of Permanent Impairment* (the *Guides*), which he stated correlated to the Fifth Edition. Dr. Kulwicki did not directly address what, if any, restrictions he would impose on Stumbo.

**D.  David J. Jenkinson, M.D.**

Ashland filed the March 2010 and June 2012 independent medical evaluation reports from Dr. Jenkinson. In his 2010 report, Dr. Jenkinson

5

stated that Stumbo complained of sharp left knee pain aggravated by weight bearing, with stiffness and an occasional catching sensation. Dr. Jenkinson's examination revealed complaints of diffuse tenderness but no objective abnormalities. Following his examination, Dr. Jenkinson made a diagnosis of a minor left knee strain with complaints out of proportion to any objective abnormality. He assigned no impairment rating and imposed no restrictions.

In his 2012 report Dr. Jenkinson noted that, since his 2010 evaluation, Stumbo had undergone surgery and developed DVT. Stumbo complained of constant knee pain, left leg numbness and tingling, and intermittent swelling. Dr. Jenkinson's examination revealed no swelling, full range of motion, normal ligaments, minimal tenderness to palpation, normal muscle strength, no muscle loss, and normal reflexes. Following this examination and review of Stumbo's medical records, Dr. Jenkinson made diagnoses of a history of left knee strain with a possible bone bruise and "[p]re-existing coagulation disorder predisposing him to recurrent blood clots." Dr. Jenkinson assigned Stumbo a 2% impairment rating and stated that Stumbo would have no restrictions for his knee injury or pre-existing coagulation disorder.

**E.    Other Medical Records/Reports.**

Stumbo filed a number of treatment records, including physical therapy records, off-work slips, and records regarding treatment for the DVT, pulmonary embolism and antiphospholipid syndrome. Ashland filed a number of utilization review reports, which dealt primarily with the DVT, pulmonary embolism, and antiphospholipid syndrome. Because those records are not

directly relevant to the issues before us, we have chosen not to summarize them.

## F.     The ALJ's Opinion

The ALJ summarized the evidence, noting the impairment ratings and restrictions from the evaluating and treating physicians. After summarizing the evidence, the ALJ found Stumbo to be totally and permanently disabled. In doing so, he stated as follows:

> I saw and heard the plaintiff testify at the hearing. He was a credible and convincing witness. Based on the totality of the evidence in the record, including the plaintiff's testimony and the medical reports of Dr. Kulwicki, Dr. Herr and Dr. Nadar, which I found persuasive, I make the factual determination that Mr. Stumbo sustained a significant permanent whole person impairment as a result of his work injury on February 1, 2010.

The ALJ then set forth a summary of the law regarding the findings he was required to make to determine if Stumbo is permanently totally disabled. Applying that law, the ALJ stated:

> In the present case, I considered the severity of the plaintiff's work injury, his age, his work history and the specific medical evidence from Dr. Kulwicki, Dr. Herr and Dr. Nadar regarding his permanent impairment and occupational disability. Based on all of those factors, I make the factual determination that Mr. Stumbo cannot find work consistently under regular circumstances and work dependably. I, therefore, make the factual determination that he is permanently and totally disabled.

## G.     The Board's Opinion.

The Board conducted a thorough review of the lay and medical proof, and, after doing so, vacated the ALJ's opinion and remanded for additional findings of fact. In doing so, the Board held that, because Dr. Kulwicki relied on the Sixth Edition of the *Guides*, "his opinions and impairment rating do not

7

constitute substantial evidence." Furthermore, the Board held that the ALJ had not "articulate[d] sufficient findings to apprise both the parties and this Board of the reasons for his ultimate conclusion. Here, not only are there insufficient findings of fact, but Stumbo's testimony indicates that with accommodation, he is capable of gainful employment over an eight hour day." Although asked to do so by Ashland, the Board did not find as a matter of law that Stumbo is only permanently partially disabled.

## G. The Court of Appeals Opinion.

The Court of Appeals, citing extensively to the Board's opinion, affirmed the Board as to Stumbo's appeal. As to Ashland's cross-appeal, the Court of Appeals found that there was conflicting evidence regarding the extent of Stumbo's disability; therefore, it refused to find that, as a matter of law, the ALJ could only find Stumbo to be permanently partially disabled.

## II. STANDARD OF REVIEW.

The ALJ, as fact finder, has "the sole discretion to determine the quality, character, and substance of [the] evidence and to draw reasonable inferences from the evidence." *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000). In reaching his decision, the ALJ "may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Id.* However, when assessing an impairment rating, the ALJ must do so based on medical opinions derived from use of the Fifth Edition of the *Guides*. *See George Humfleet Mobile Homes v. Christman*, 125 S.W.3d 288, 289 (Ky. 2004).

8

## III. ANALYSIS.

We agree that the ALJ's opinion is deficient in this case for two reasons. First, as noted by the Board and the Court of Appeals, Dr. Kulwicki's opinion regarding Stumbo's impairment rating was based on the Sixth Edition of the *Guides*. Therefore, Dr. Kulwicki's opinion regarding Stumbo's impairment rating may not be considered by the ALJ. However, Dr. Kulwicki's use of the Sixth Edition of the *Guides* does not necessarily taint any other opinions he may have offered. Therefore, the ALJ is free to consider on remand any non-impairment rating opinions expressed by Dr. Kulwicki.

Second, Kentucky Revised Statute (KRS) 342.0011(11)(c) defines permanent total disability as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" A permanent disability rating is "the permanent impairment rating selected by an [ALJ] times the factor set forth in the table that appears at KRS 342.730(1)(b)."

Thus, an ALJ is required to undertake a five-step analysis in order to determine whether a claimant is totally disabled. Initially, the ALJ must determine if the claimant suffered a work-related injury. Here, the parties stipulated that Stumbo suffered a work-related injury; therefore, the ALJ was not required to make that finding. Next, the ALJ must determine what, if any, impairment rating the claimant has. Here, the ALJ listed the various impairment ratings assigned to Stumbo by the physicians. However, the ALJ never found which impairment rating Stumbo actually has. Having failed to

9

determine what impairment rating Stumbo has, the ALJ could not then determine what permanent disability rating Stumbo has. Thus, the ALJ failed to satisfy the second and third steps of the analysis. Next, an ALJ is required to determine that the claimant is unable to perform any type of work. Here, the ALJ attempted to undertake this analysis, but, as noted by the Board and the Court of Appeals, he fell short. An ALJ cannot simply state that he or she has reviewed the evidence and concluded that a claimant lacks the capacity to perform any type of work. The ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled. Such findings are particularly crucial in a case such as this where: part of Stumbo's condition and arguably some of his restrictions are related to his pre-existing antiphospholipid syndrome; Stumbo testified he could perform sedentary work with accommodations; no physician imposed any restrictions that would foreclose Stumbo from performing sedentary work; Stumbo has performed a wide-range of work activity; and Stumbo has obtained 90 hours of college credits. Finally, an ALJ must determine that the total disability is the result of the work injury. Here, again, the ALJ fell short because he failed to delineate which, if any, of Stumbo's restrictions are related to the knee injury and which are related to the pre-existing antiphospholipid syndrome.

Based on the foregoing, we agree with the Board and the Court of Appeals that the ALJ's opinion was not sufficient to support his ultimate conclusion.

10

We also agree with the Board and the Court of Appeals that this matter must be remanded to the ALJ for him to make the appropriate findings. Although we agree with the implication in the Board's opinion that it will be difficult for the ALJ, faced with this record, to justify an award of permanent total disability, determining the extent of Stumbo's disability is within the ALJ's purview. Therefore, we also affirm as to Ashland's cross-appeal.

## IV. CONCLUSION.

The opinion of the Court of Appeals is affirmed. On remand, the ALJ shall undertake the proper analysis mandated by KRS 342.0011(11) and determine whether Stumbo is permanently partially or permanently totally disabled. In doing so, the ALJ must explain the basis for his determination citing with specificity to the evidence on which he relied.

All sitting. Minton, C.J., Abramson, Cunningham, Keller and Noble, JJ., concur. Barber, J., concurs by separate Opinion which Venters, J., joins.

BARBER, J., CONCURRING: I concur, but write separately.

When asked whether he could perform a job that required him to sit, stand and walk eight hours a day, five days a week, Stumbo explained that "would depend on, ... how much sitting, standing, and walking. ... [whether] it was broken up and [if he] was able to move around, ... in [his] discretion and elevate [his] leg when it was – when it was time to hurt, yes."

> Determining whether a particular worker has sustained a partial or total occupational disability as defined by KRS 342.0011(11) clearly requires a weighing of the evidence concerning whether the worker will be able to earn an income by providing services on a regular and sustained basis in a

11

> competitive economy. For that reason, we conclude
> that some of the principles set forth in *Osborne v.
> Johnson,* [432 S.W.2d 800 (Ky. 1968)], remain viable
> when determining whether a worker's occupational
> disability is partial or total.

*Ira A. Watson Dep't Store v. Hamilton,* 34 S.W.3d 48, 51 (Ky. 2000)

The analysis "clearly requires an individualized determination" of what a worker can, and cannot do, once he recovers from an injury. *Id.* "[A] claimant can certainly know as a fact if he is in pain, as well as he can know when it hurts to perform certain physical activities. He is entitled to tell and our court will give credence and weight to such testimony." *Ruby Const. Co. v. Curling,* 451 S.W.2d 610, 612 (1970).

Ashland vigorously argues that Stumbo is capable of performing work. That is not for this Court to decide; however, a finding of permanent total disability does not require that Stumbo be homebound. *Watson,* at 51. On remand, if the ALJ again concludes that Stumbo is permanently and totally disabled, Ashland has the right to reopen pursuant to 342.710(3) and seek to reduce the award, in the event Stumbo returns to work.

Venters, J., joins.


COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Scott Michael Guenther
Edward Leo Metzger III
Adams, Stepner, Woltermann & Dusing, PLLC


COUNSEL FOR APPELLEE/CROSS APPELLANT:

John Earl Hunt