RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1001-WC

LYON COMPANY                                                                          APPELLANT

|     | PETITION FOR REVIEW OF A DECISION |
| --- | --- |
| v.  | OF THE WORKERS' COMPENSATION BOARD |
|     | ACTION NO. WC-17-74742 |

MICHAEL FORD;
HONORABLE W. GREG HARVEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE: Lyon Company (Lyon) appeals the decision of the Workers'

Compensation Board (the Board), which affirmed the administrative law judge's

(ALJ's) order granting Michael Ford permanent partial disability benefits as a

result of a work-related injury to his left knee. After careful review, we affirm.

## Factual and Procedural History

Ford began working for Lyon in 2009 performing sheet metal and plumbing work. As part of his job, Ford would regularly climb ladders to install ductwork in ceilings; this activity required him to lift items weighing up to sixty pounds over his head while doing so. On July 7, 2017, Ford was on a ladder at work when he twisted or pivoted his body and immediately felt severe pain in his left knee, which began to swell. Ford gave notice to Lyon of the injury and sought medical treatment. The treating clinic referred Ford to Dr. Robert Riley, who diagnosed Ford's left knee as having "osteoarthritis in the lateral femoral compartment with a complex radial tear of the posterior horn of the medical meniscus." (Record (R.) at 239.) Dr. Riley then placed Ford under work restrictions. After conservative measures, including corticosteroid injections, failed to successfully treat Ford's left knee, Dr. Riley opined that Ford would require a left knee replacement surgery. Dr. Riley also "completed a questionnaire indicating Ford's condition was caused by his July 7, 2017 left knee injury at work." (R. at 239.) Ford subsequently filed a Form 101 asserting his claim of workplace injury.

For its part, Lyon asserted the condition of Ford's left knee was not the result of a workplace injury, but instead resulted from a preexisting condition. Ford, who was fifty years old at the time of the July 7, 2017 injury, had a prior

history of treatment for his *right* knee, which culminated in a knee replacement surgery for the right knee in 2014. Ford's medical records contained no specific issues with his left knee prior to the workplace injury, although he had complained to his primary care physician, Dr. Hume, about general pain in his left leg in December 2016.

To support its defense, Lyon engaged Dr. Frank Bonnarens to evaluate Ford. After reviewing the notes of the physician who replaced Ford's right knee, Dr. Bonnarens opined that Ford suffered "degenerative tearing of the menisci" in his left knee as a result of osteoarthritis which was "long standing in nature." (R. at 241.) Dr. Bonnarens relied on Dr. Hume's records in which Ford complained of bilateral hip and lower extremity pain. Dr. Bonnarens also opined that "any pain related to the work injury would have resolved with[in] three to four weeks." (R. at 242-43.) However, in his deposition, Dr. Bonnarens admitted that Ford's previous medical records do not specifically identify any complaints with his left knee. Furthermore, Dr. Bonnarens admitted there was nothing to indicate Ford had any difficulty performing his job or routine daily activities prior to the workplace injury.

On July 19, 2018, Ford moved to bifurcate the proceedings in order to settle the issue of the compensability regarding his left knee replacement surgery and temporary total disability (TTD) benefits. After a hearing, the ALJ issued an

interlocutory opinion, award, and order in which he resolved the causation issue in Ford's favor. The ALJ found that Ford carried his burden of persuasion regarding the asymptomatic nature of his left knee's condition prior to the workplace incident, and Ford's account was consistent with Dr. Riley's opinion. The ALJ also specifically found Dr. Riley's opinion more persuasive than that of Dr. Bonnarens. The ALJ's order granted Ford his left knee surgery as medically reasonable and necessary for the relief of his workplace injury. The ALJ also awarded medical and TTD benefits until Ford reached maximum medical improvement. Despite these findings, the ALJ allowed for the possibility "that some portion of Ford's left knee condition was impairment ratable" prior to the workplace injury; therefore, the ALJ would permit Lyon to argue that issue at a later time. The ALJ also reserved all issues regarding permanency for later adjudication.

After the left knee replacement surgery, Ford underwent physical therapy and continued to see Dr. Riley until September 20, 2019. Ford was eventually permitted to return to work with light-duty restrictions, but Lyon could not accommodate those restrictions. Even after Dr. Riley lifted these light-duty restrictions, Ford did not return to work with Lyon or any other employer. Ford's prior work experience was in manual labor, which he no longer believed he had the ability to perform due to his left knee injury. Ford testified before the ALJ about

these physical limitations. Ford cannot bend or squat. He still suffers from residual pain in his left knee, and he can only stand for about fifteen minutes at a time without increasing pain or swelling. Ford also can no longer participate in many routine activities of daily living, and other activities can only be undertaken with difficulty. Regarding his leisure activities, he can no longer hunt or fish, nor can he play with his grandchildren in the same way as he did before the injury.

In addition to the medical evidence adduced previously, Ford submitted a medical evaluation performed by Dr. Jules Barefoot on October 15, 2019. Dr. Barefoot took note of Ford's previous medical history, including the non-work related right knee replacement. Dr. Barefoot diagnosed the left knee injury and the resulting surgery as caused by the work injury on July 7, 2017. Dr. Barefoot acknowledged the presence of preexisting osteoarthritis but asserted "that condition was asymptomatic, dormant, nondisabling, and non-impairment-rateable prior to his workplace accident." (R. at 279.) Dr. Barefoot opined that the treatment provided by Dr. Riley was reasonable and necessary to treat Ford's work-related injury. Dr. Barefoot also opined that Ford could no longer work on ladders or scaffolding, and thus it would be "extremely doubtful" he could return to working for Lyon. (R. at 282.) Finally, pursuant to the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, 5th Edition

(2000) (AMA *Guides*), Dr. Barefoot assessed Ford with twenty percent whole-person impairment attributed entirely to the work-related injury to Ford's left knee.

Lyon submitted its own medical evaluation of Ford, which was performed by Dr. Stacie Grossfeld on December 9, 2019. She noted Ford as having undergone a successful total left knee replacement. Dr. Grossfeld opined that "Ford suffered a left knee strain on July 7, 2017 and . . . the meniscal pathology was secondary to the advanced degenerative changes in the knee which . . . were preexisting and active prior to the work accident." (R. at 430.) Dr. Grossfeld found Ford had preexisting active osteoarthritis which was secondary to his morbid obesity. The doctor also noted it was "common to have meniscal pathology if there is advanced osteoarthritis." (R. at 430.) Finally, Dr. Grossfeld assessed Ford as having fifteen percent whole-person impairment under the AMA *Guides* for his left knee, of which she apportioned ten percent to Ford's preexisting active osteoarthritis. Pointing to Dr. Grossfeld's opinion, Lyon argued that, even if the July 7, 2017 injury was work related, ten percent of the whole-person impairment rating should be carved out of the award because it was a symptomatic preexisting condition.

After a hearing in which the ALJ considered the foregoing evidence as it related to permanent disability, the ALJ confirmed his interlocutory finding that Ford suffered a compensable left knee injury while working for Lyon on July

7, 2017. The ALJ acknowledged the opinion provided by Dr. Grossfeld was consistent with that of Dr. Bonnarens but stated "additional evidence of the same character, however, does not compel the ALJ to reconsider the initial finding of causation and work-relatedness of the left knee injury and replacement." (R. at 432.) Instead, the ALJ determined "the incident in question was found to have exacerbated that otherwise dormant condition such that it came into a disabling reality." (R. at 432.) The ALJ considered the impairment evidence submitted by the parties and determined Ford suffered fifteen percent whole-person impairment, consistent with Dr. Grossfeld's opinion. However, because the ALJ was not persuaded that the left knee was actively symptomatic prior to the July 7, 2017 incident, the ALJ declined to carve out a portion of the fifteen percent whole-person impairment as preexisting and active.

After performing an analysis pursuant to *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), the ALJ declined to award permanent total disability (PTD) benefits to Ford. The ALJ agreed with Dr. Barefoot that Ford would not be able to return to his previous work with Lyon in which he regularly worked on ladders. However, the ALJ pointed out that "no physician opined Ford was incapable of returning to gainful employment." (R. at 437.) The ALJ acknowledged it would be difficult for Ford to become work-ready. However, both Dr. Riley and Dr. Grossfeld opined that Ford obtained a good surgical result

and had no restrictions bearing on employability. Instead, the ALJ awarded permanent partial disability (PPD) benefits based on fifteen percent whole-person impairment, enhanced by the three-multiplier found in KRS[1] 342.730(1)(c) due to Ford's being physically incapable of returning to work on ladders. The ALJ concluded by reaffirming its previous award of TTD benefits and medical benefits, in addition to the new award of PPD benefits.

Lyon filed a petition for reconsideration, again arguing Ford's osteoarthritis constituted a ten percent preexisting impairment which should be carved out of the award. The ALJ denied Lyon's petition. Lyon thereafter appealed to the Board, which affirmed the ALJ. This appeal followed.

**Analysis**

In its sole argument on appeal, Lyon argues the medical evidence should have compelled the ALJ to find Ford had a preexisting left knee impairment which must be carved out of the PPD award. Lyon contends all of the medical evidence, including Dr. Riley's diagnosis, pointed to preexisting osteoarthritis in Ford's left knee. Furthermore, Lyon contends the osteoarthritis was active prior to the workplace injury, arguing Ford had complained of arthritic pain in both legs to his primary care physician in 2016. Finally, Lyon relies on the opinions provided by Dr. Bonnarens and Dr. Grossfeld to support its theory that Ford was suffering

---

[1] Kentucky Revised Statutes.

from active impairment due to osteoarthritis prior to the injury. In particular, Lyon argues the ALJ should have credited Dr. Grossfeld's opinion that there was ten percent whole-person impairment due to osteoarthritis prior to the injury; therefore, Lyon should be only liable for a five percent impairment rating caused by the workplace injury.

Our review of the Board's opinion is limited. "When reviewing the Board's decision, we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). "The burden of proof in a Workers' Compensation claim is on the claimant . . . to prove each and every essential element of his claim." *Ford Motor Company (LAP) v. Curtsinger*, 511 S.W.3d 922, 926 (Ky. App. 2017) (citing *Snawder v. Stice*, 576 S.W.2d 276 (Ky. App. 1979)). "When the decision of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).

The Board affirmed the ALJ's opinion and order on two separate grounds, first by asserting the ALJ has the sole authority to determine the weight of

the evidence. We agree. Under KRS 342.285, the ALJ is the sole factfinder in all workers' compensation claims. "KRS 342.285 designates the ALJ as finder of fact, and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

Here, the Board correctly noted the medical evidence in this case was conflicting. Dr. Barefoot and Dr. Riley considered Ford's left knee injury to have been caused by the workplace incident on July 7, 2017, while Dr. Bonnarens and Dr. Grossfeld came to a different conclusion. "The fact-finder may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000). In addition, where conflicting medical evidence is concerned, the question of whom to believe is one exclusively for the factfinder. *Yocom v. Gentry*, 535 S.W.2d 850, 851 (Ky. 1976). Finally, "[e]vidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012) (citing *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46 (Ky. 1974)). We agree

-10-

with the Board and decline Lyon's invitation to reweigh the medical evidence in its favor.

Next, the Board correctly determined that Lyon failed to meet its burden of proving the existence of Ford's osteoarthritis as a preexisting condition:

> It is well-established that the work-related arousal of a pre-existing dormant condition into disabling reality is compensable. . . . To be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA *Guidelines* immediately prior to the occurrence of the work-related injury. Moreover, the burden of proving the existence of a pre-existing condition falls upon the employer. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984).

*Finley v. DBM Techs.*, 217 S.W.3d 261, 265 (Ky. App. 2007). The Board held "the ALJ properly found there was no evidence in the record indicating the left knee condition was symptomatic immediately prior to the work incident." (R. at 514.) Although the medical evidence indicated Ford suffered from osteoarthritis, Dr. Riley and Dr. Barefoot opined the condition was asymptomatic prior to the injury. Ford's testimony, which the ALJ specifically credited, also supports the asymptomatic nature of his condition prior to July 7, 2017. The ALJ was within his discretion in choosing to believe this evidence. We discern no error.

**Conclusion**

For the foregoing reasons, we affirm the Board's opinion affirming the ALJ's opinion, award, and order.

ALL CONCUR.


BRIEF FOR APPELLANT:

Whitney M. Kunjoo
Donald C. Walton, III
Lexington, Kentucky

BRIEF FOR APPELLEE
MICHAEL FORD:

Christopher P. Evensen
Louisville, Kentucky