RENDERED: SEPTEMBER 24, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0803-WC

CALLOS RESOURCE, LLC                                    APPELLANT

PETITION FOR REVIEW OF A DECISION
v.          OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-17-57801

GREG FARIS; HONORABLE
CHRISTINA D. HAJJAR,
ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE: This is a case involving workers' compensation. Appellant,

Callos Resource, LLC (Callos), the defendant-employer below, appeals from an

opinion of the Workers' Compensation Board affirming an award by the

Administrative Law Judge (ALJ) of permanent total occupational disability benefits. Finding no error after our review, we affirm.

On October 26, 2017, Appellee, Greg Faris (Faris), a carpenter, was injured when he fell from a ladder. He was 67 years of age on the injury date, and he was employed by Callos, a staffing agency, on assignment to 1st Call Disaster Services.

At the January 7, 2021, hearing, Faris testified that he was on a roof at work. The ladder came out from under him. He fell about ten feet and flipped over. Faris was taken by ambulance to a helicopter and was then transported to the University of Cincinnati Hospital. Faris was discharged after two nights in the hospital, with diagnoses of a small right-sided pneumothorax and right rib fractures. Faris was sent home after his release. Asked what he did most of the time when he got home, Faris testified that "I couldn't move. . . . I was sitting in a recliner chair."

Faris saw his primary care physician, Dr. Ria Santos, in a follow-up visit. Dr. Santos's records reflect that she saw Faris on November 27, 2017, referred him to physical therapy (PT), and stated that he was unable to return to work without restrictions at this time. Faris returned on December 14, 2017. On that date, he had complaints of dizziness that usually occurred when arising from bed or standing up. On January 18, 2018, Dr. Santos noted that Faris had

developed tachycardia and lightheadedness during a functional capacity evaluation (FCE) and was sent to the emergency room. Dr. Santos's assessment included benign paroxysmal positional vertigo, unspecified laterality; sinus tachycardia; and dyspnea on exertion (DOE). Dr. Santos advised that "DOE and tachycardia on exertion is related to deconditioning. He has been sedentary for at least 3 months." Dr. Santos recommended conditioning exercises prior to FCE. On February 15, 2018, Dr. Santos's progress note reflects that: "Off work since Oct 26, 2017 after work injury; started PT then. Work conditioning PT completed. FCE -- He is at maximal medical improvement and he is not able to return to his previous job."

Dr. Santos also prepared a Form 107 report dated May 28, 2019.[1] Her diagnoses included right 2nd, 3rd, 4th, 5th, 6th, and 9th rib fractures, right pneumothorax, and vertigo (benign positional). Dr. Santos did not calculate an impairment rating under the American Medical Association (AMA) *Guides to the Evaluation of Permanent Impairment* (the *Guides*), stating that she is not familiar with the *Guides*. She indicated that Faris did **not** have an active impairment prior to the injury. Dr. Santos opined that Faris reached maximum medical improvement in February 2018, that he does not retain the physical capacity to return to the type of work performed at the time of the injury, and that "all" restrictions should be placed upon Faris's work activities as a result of the injury.

---

[1] Faris filed Dr. Santos's Form 107 report as an attachment to the Form 101.

Both parties obtained independent medical examinations (IMEs). Faris filed the Form 107 report of Dr. Lester Duplechan, who assigned 30% for ear, nose, and throat/vestibular impairment, under Chapter 11, Table 11-4, page 253 of the 5th Edition AMA *Guides*.

Callos filed the November 2, 2020, IME report of Dr. Ellen Ballard. Dr. Ballard's work-related diagnosis is multiple rib fractures. She assigned an impairment rating under the 5th Edition AMA *Guides* because of the rib fractures. "This would be 5% (DRE Category II, Table 15-4, page 389). All of that would be due to the work injury." Dr. Ballard does not believe that Faris could perform the job he performed at the time of the injury; however, she attributed that inability to Faris's other medical problems. According to Dr. Ballard's report, Faris "had previously suffered from diabetes, peripheral neuropathy, Crohn's disease." Dr. Ballard noted that Faris had recently begun treatment for tongue cancer and had undergone a radical neck dissection in August of 2020.

On March 5, 2021, the ALJ rendered an opinion, award, and order. The ALJ found that Faris's initial vertigo was related to his fall -- but that his initial symptoms resolved with therapy and there was not sufficient evidence that Faris's ongoing dizziness was due to the injury. Relying upon the 5% impairment rating that Dr. Ballard assigned for the rib fractures, the ALJ concluded that Faris

was permanently and totally disabled.  The ALJ was persuaded by Dr. Santos's

opinion that Faris was unable to work and explained as follows:

> In her [Form 107] report, Dr. Santos stated "all" restrictions on work activities, as [Faris] was still symptomatic. . . .  Dr. Santos may not have been aware that [Faris] actually did return to work from March 2018 through November 2018.  However, given that Faris was not successful in his attempt to return to work (a fact acknowledged by Defendant), **this ALJ believes Dr. Santos' opinion about his inability to work due to the injury is still valid**.

ALJ Opinion, pp. 13-14 (emphasis added).  The ALJ explained that she did ***not***

believe Dr. Ballard's opinion attributing Faris's inability to work to his other non-

work-related medical conditions:

> The ALJ considered Dr. Ballard's report, in which she attributed [Faris's] inability to work due to all of his other non-work related conditions.  However, this ALJ finds that **Dr. Ballard did not address the FCE indicating [Faris] was deconditioned from being sedentary after the injury.  Thus, here** [sic] **report is not credible**.

*Id*. at 14 (emphasis added).  The ALJ found "it significant that prior to the injury,

[Faris] was hired as a full time employee for Callos, after being an independent

contractor, because of the good quality of his work, but was terminated after the

injury due to his poor workmanship." *Id*. at 15.[2]

---

[2] Greg Day, operations manager for 1st Call Disaster Services, testified by deposition that Faris was originally brought in on an independent contractor basis.  Callos hired Faris as an employee because of the quality of his work.  On the injury date, Faris's job title was "reconstruction

The ALJ further explained as follows:

This ALJ acknowledges Faris has multiple other medical problems that contribute to his inability to perform the work he was performing at the time of the injury[.] . . . However, this ALJ has based her decision that he cannot return to work solely on [Faris's] deconditioning due to the injury. Dr. Santos made this determination after he underwent work hardening physical therapy in an attempt to improve his condition so he could return to work. She further assessed maximum medical improvement at this time, suggesting that further therapy or conditioning would not improve his ability to work. Faris himself also testified that it was difficult to keep up, and even the employer acknowledged he was unable to perform the work as he used to do and fired him for it. Thus, this ALJ finds Faris does not have the physical capacity to return to the work he performed at the time of his injury due to his work injury.

. . .

Permanent total disability is defined in KRS [Kentucky Revised Statute] 342.0011(11)(c) as the condition of an employee who, due to an injury, has a permanent disability rating and who has a complete and permanent inability to perform any type of work as a result of an injury. Work is defined as meaning providing service to another in return for remuneration on a regular and sustained basis in a competitive economy. KRS 342.0011(34). In *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015) the Kentucky Supreme Court laid out a five-step analysis which the ALJ must utilize in determining entitlement to permanent

---

technician," which involved performing various projects -- drywall, framing, painting, trim work -- general construction. After Faris returned to work following the subject injury, he was employed by 1st Call Disaster Service doing the same thing as before. Day terminated Faris due to a "severe decline in workmanship[.]"

total disability. Initially, the ALJ must determine if the claimant suffered a work related injury. Next, the ALJ must determine what, if any, impairment rating the claimant has. Third, the ALJ must determine what permanent disability rating the claimant has. Then the ALJ must make a determination that the claimant is unable to perform any type of work. (In making this determination the ALJ must state with some specificity the factors which were utilized in making the conclusion the claimant is permanently and totally disabled). Finally, the ALJ must determine that the total disability is the result of the work injury.

[Faris] has a 5% impairment rating and a 3.25% disability rating. Although he has a low impairment rating, this ALJ finds that the significant time he was sedentary after the injury has caused him to be deconditioned to the point he is unable to return to any work, including his prior work as a carpenter. **His only prior work has been working in construction as a carpenter. Due to his age of 70, his lack of education beyond high school, and his only work experience was working as a carpenter, this ALJ finds it is very unlikely he could be retrained or return to any work of [sic] which he has prior experience. He also had an unsuccessful return to work attempt, which resulted in his termination because of his inability to perform his work as a carpenter. Thus, Faris is permanently and totally disabled**. This ALJ specifically only considered his deconditioning (and not his other medical conditions), in concluding he is permanently totally disabled.

Callos filed a petition for reconsideration. With respect to the ALJ's determination that Faris is permanently and totally disabled, Callos argued that there was no evidence Faris was permanently deconditioned and that no medical provider had assigned a rating due to deconditioning. By order rendered March 30,

2021, the ALJ denied Callos's petition, denying it as an impermissible re-argument of the merits; she further elaborated as follows:

> To the extent it is necessary to address whether Plaintiff's deconditioning was permanent or temporary, this ALJ relied on Dr. Santos' opinion that he was at maximum medical improvement when she determined he could not return to his job. This suggests she did not expect his condition to improve further to allow him to return to work. Additionally, this ALJ finds it relevant that Faris attempted to return to work, but was eventually fired for being unable to adequately perform his job duties. This ALJ finds that his condition is permanent.

Callos appealed to the Board, which affirmed by opinion rendered on June 18, 2021. The Board found no merit in Callos's argument that the ALJ erred in finding that Faris was permanently and totally disabled due to his work injuries. The Board noted that Faris was unsuccessful in his attempt to return to work in March 2018; that he was terminated because his work was unsatisfactory; that Dr. Ballard's report established that Faris does not have the capacity to return to his previous work; and that "[t]here is no evidence of record establishing that Faris retained the ability to return to his pre-injury work." The Board concluded that the ALJ had performed the appropriate analysis pursuant to *City of Ashland v. Stumbo*, *supra*,[3] and *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky.

---

[3] The five-step analysis in *City of Ashland* requires that the ALJ determine: (1) whether the claimant had a work-related injury; (2) the claimant's impairment rating; (3) the claimant's permanent disability rating; (4) whether the claimant is unable to perform any type of work; and (5) whether the claimant's total disability is a result of the work-related injury.

2000), in finding that Faris is permanently totally disabled. Callos then filed this appeal.

Where, as here, the party with the burden of proof on an issue succeeds before the ALJ and the adverse party appeals, the question on appeal is whether the ALJ's decision is supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984). As our Supreme Court reiterated in *Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233 (Ky. 2019):

> The well-established standard of review for the appellate courts of a workers' compensation decision "is to correct the [Workers' Compensation] Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."

*Id.* at 237-38 (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

Callos submits that "[w]hile the ALJ correctly pointed out that Faris was noted to be deconditioned in February, 2018 . . . there is no subsequent report or opinion from *any* medical professional stating that Faris was, or permanently remained, in a deconditioned state as a result of the work injury." Callos argues that consequently it was error for the ALJ to determine that Faris is permanently and totally disabled.

We cannot agree. In her May 28, 2019, Form 107 report, Dr. Santos opined that Faris does not retain the physical capacity to return to the type of work performed at the time of the injury and that "all" restrictions should be placed on his work activities *as a result of the injury*. As set forth above, the ALJ explained in scrupulous detail why she believed that Dr. Santos's opinion was valid regarding Faris's inability to work. As fact-finder, the ALJ "had the right to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof." *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

Dr. Santos's opinion provides a substantial evidentiary foundation to support the ALJ's award of permanent total disability benefits. We agree with the Board that the ALJ performed the appropriate analysis in concluding that Faris is permanently and totally disabled.

Accordingly, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Aaron D. Reedy
Lexington, Kentucky

BRIEF FOR APPELLEE GREG
FARIS:

Thomas L. Rouse
Fort Mitchell, Kentucky