# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D)  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: APRIL 27, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0566-WC

KELLOGG'S                                       APPELLANT/CROSS-APPELLEE

V.            ON APPEAL FROM COURT OF APPEALS
2020-CA-0709
WORKERS' COMPENSATION BOARD
WC-14-90651

LESLIE LAWRENCE                         APPELLEE/CROSS-APPELLANT

HONORABLE CHRIS DAVIS,                       APPELLEES
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

2022-SC-0010-WC

LESLIE LAWRENCE                         APPELLANT/CROSS-APPELLEE

V.            ON APPEAL FROM COURT OF APPEALS
2020-CA-0709
WORKERS' COMPENSATION BOARD
WC-14-90651

KELLOGG'S                                   APPELLEE/CROSS-APPELLANT

HONORABLE CHRIS DAVIS,                       APPELLEES
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, REVERSING IN PART & REMANDING**

This case is before the Court on appeal as a matter of right.[1] Kellogg's argues the ALJ did not comply with the requirements laid down in *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), when he ruled that Leslie Lawrence was permanently, totally disabled. Lawrence, on the other hand, appeals from the ALJ's ruling, arguing for "an award of Permanent Partial Disability benefits based on the 8% Whole person impairment beginning with the date of injury, offset by periods of temporary total disability benefits, until the date he became permanently totally disabled." The Worker's Compensation Board reversed the ALJ as to the issue of compliance with *City of Ashland* but affirmed the ALJ's refusal to grant PPD payments. The Court of Appeals reversed the Board as to compliance with *City of Ashland* but affirmed the refusal to grant PPD payments. For the following reasons, we affirm in part, reverse in part, and remand to the ALJ for further consideration.

## I.  Facts

Lawrence worked for Kellogg's from 1977 to April 9, 2016, the day he retired. In 1999, he was transferred to the shipping and receiving department where he loaded orders using a forklift. On March 11, 2014, he was struck by a co-worker operating a forklift, injuring his right foot underneath the vehicle. As recounted by the Court of Appeals,

> As a result of the accident, Lawrence sustained significant injuries to his right ankle. Lawrence sought treatment from Dr. Kevin Harreld, who diagnosed Lawrence with a fractured right ankle and initially placed his ankle in a cast. Dr. Harreld subsequently performed an open reduction and internal fixation procedure to

---

[1] Ky. Const. § 115.

2

repair Lawrence's injured ankle. On May 5, 2014, Dr. Harreld noted that Lawrence could return to work with restrictions of sit-down duty only and the ability to elevate his right leg and take breaks as necessary. In September of 2014, Lawrence returned to work for Kellogg's on full duty. Lawrence testified that upon returning to regular duty, his ankle swelled and his back hurt from standing for long periods of time while working.

Lawrence was on full-duty work release until November of 2015 when he returned to Dr. Harreld with complaints of continued ankle pain. At that time, Dr. Harreld gave Lawrence work restrictions to allow him to take breaks at work every two hours as needed to elevate his right leg, ice his ankle, and limit forklift use to two hours at a time. On January 20, 2016, at Lawrence's request, Dr. Harreld performed an operation to remove the surgically placed hardware from Lawrence's right ankle. Thereafter, on March 1, 2016, Dr. Harreld released Lawrence to return to work at full duty, with the restriction that he could take breaks every two hours to elevate and ice his right ankle. Lawrence testified that he returned to work for two days following the hardware removal surgery but ultimately decided to retire in the spring of 2016[.]

The Court of Appeals further summarized the medical evidence in this

case related to Lawrence's ankle injury,[2]

On November 4, 2014, Dr. Harreld stated Lawrence had reached maximum medical improvement (MMI) for his right ankle fracture. At this point, Dr. Harreld assigned a 3% impairment rating pursuant to the American Medical Association, *Guides to the Evaluation of Permanent Impairment* (5th ed. 2000). Dr. Harreld believed Lawrence required no further restrictions and could return to work for Kellogg's on full duty. The ALJ considered all of the above-mentioned medical treatment by Dr. Harreld, including the work restrictions he assigned Lawrence on March 1, 2016.

Dr. Guarnaschelli performed an independent medical evaluation (IME) on September 7, 2016. Dr. Guarnaschelli diagnosed Lawrence with a right ankle fracture caused by a work-related injury. He assigned Lawrence a 21% total impairment

---

[2] Lawrence's original claim had also sought compensation for a psychological condition, lower back condition, and left knee condition. The ALJ ruled against all three claims. Lawrence did not appeal those rulings to the Court of Appeals nor this Court so we will not discuss the evidence related to those claims.

rating and believed Lawrence would experience difficulty returning to full-time employment without significant ability to sit, rest, and take frequent breaks. Dr. Guarnaschelli further observed that persistent standing or walking would exacerbate the healing process of Lawrence's right ankle fracture.

Lawrence was examined by Dr. Roberts on February 14, 2018 as part of an additional IME. Dr. Roberts diagnosed a fractured right ankle and noted that he believed the injury was the result of the forklift incident. Dr. Roberts noted that he believed Lawrence reached MMI on October 11, 2014 and assigned him an 8% impairment rating due to his right ankle injury. Further, Dr. Roberts acknowledged that he did not believe Lawrence was capable of returning to any competitive employment on a regular and sustained basis.

Dr. Larkin conducted an IME on Lawrence on April 4, 2018. The physical examination of Lawrence's right ankle showed a reduced range of motion. Dr. Larkin assigned an 8% impairment rating and indicated that he believed Lawrence reached MMI on March 2, 2016. Dr. Larkin further opined that Lawrence could return to the type of work done at the time of his injury.

[Robert] Tiell conducted a vocational evaluation of Lawrence on December 17, 2016. Tiell reported that Lawrence was considered an older adult and that his ankle injury was a significant deterrent for employability. Tiell defined Lawrence's work for Kellogg's from 1977 through April 2016 as semi-skilled in nature and requiring at least medium exertion. Finally, Tiell noted that he believed Lawrence had a 100% occupational loss due to his ankle injury, and "did not believe Lawrence had skills to transfer into other jobs such as clerical."

Dr. Conte conducted a vocational evaluation of Lawrence on April 12, 2018 in which he performed a review of Lawrence's medical records and administered to Lawrence various vocational skills tests. Dr. Conte reported that Lawrence's test scores indicated the capacity to perform a variety of occupations in the "semi-skilled and unskilled labor market" and that he believed Lawrence has the capacity to acquire additional vocational skills.

The ALJ also made note of this evidence in his Opinion, Award and Order. The ALJ made findings of fact that Lawrence was "permanently and totally disabled as a result of the work injury[,]" and that he "is totally disabled solely as a result of his work-related right ankle injury." The ALJ adopted an

4

impairment rating of 8% based on Dr. Roberts' report. Opining further on the permanent, total disability, the ALJ wrote,

> I have the FCE from Rick Pounds, which states the Plaintiff can work as a lift truck operator. I have the restrictions from Dr. Larkin, which are that the Plaintiff can work in medium duty seated position with some weight bearing and ambulation. These would seem to indicate that the Plaintiff could find jobs within in [sic] abilities, maybe even return to the type of work done on the date of injury. However, I do not adopt these restrictions. Rather I adopt the restrictions assigned by the treating physician an surgeon, Dr. Harreld. When Dr. Harreld did finally discharge the Plaintiff after a long course of treatment, including two surgeries, he said that the Plaintiff would need to ice and elevate his right ankle periodically throughout the day.

> This restriction alone would render most people totally disabled. Much less a man who has spent his entire professional life, almost 40 years, in factories and shipping departments. It is doubtful that many employers would tolerate this for an extended period. The Plaintiff's high school education does not create sufficient opportunities to overtime this severe restriction nor does his work experience.

> While some may seek a more detailed explanation, I doubt many people could envision hiring, on a permanent basis, a 58-year-old man with factor [sic] and shipping experience, and a high school education, who had to elevate and ice his ankle every so often.

The ALJ determined the award for permanent, total disability should be retroactive to March 14, 2014, excluding periods Lawrence actually worked. He also gave a credit to Kellogg's "against any past due benefits for overpayment of TTD as to rate." The parties stipulated that TTD payments were made between March 12, 2014 through May 11, 2014, and January 2, 2016 through March 1, 2016. The ALJ's original opinion did not discuss the PPD benefits Lawrence had requested. Both parties filed petitions for reconsideration, arguing substantially the same arguments presented on this appeal. The ALJ rejected both, stating that Kellogg's was not entitled to an opinion which analyzed

5

evidence the ALJ had reviewed and rejected. He also stated that he found Dr. Conte to be "entirely uncredible[.]" Finally, he rejected Lawrence's claim for PPD benefits, stating

> While I understand the Plaintiff was working with some pain I do not believe he was solely out of necessity. It was light duty, but not made up work. He was paid equal or greater wages. He hoped to make a full recovery. His actual disability began as outlined in the Opinion.

Both parties appealed to the Worker's Compensation Board. The Board concluded the ALJ's analysis regarding the permanent, total disability was not in compliance with the requirements of *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396-97 (Ky. 2015). The Board wrote, "The ALJ's opinion does not sufficiently set forth a detailed analysis, properly weighing the evidence of record in determining whether Lawrence will be able to earn income by providing services on a regular and sustained basis in a competitive economy." As to the PPD payments, the Board wrote, "Lawrence has not cited to any authority authorizing an award of PPD prior to the award of PTD." Despite that, the Board went on to reason that Lawrence's

> condition was not at MMI until after his recovery from the second surgery for hardware removal. Lawrence received TTD benefits, or earned equal or greater wages until he recovered from his second surgery. Because the condition was not at MMI during his return to work, Lawrence would not be entitled to PTD benefits while earning full wages.

It is unclear if the reference to PTD (as opposed to PPD) benefits in the last sentence was a typographical error.

6

The Court of Appeals reversed the Board as to compliance with *City of Ashland* but affirmed the Board as to the denial of PPD benefits. Further analysis of the Court of Appeals decision will be discussed below.

## II. Standard of Review

The ALJ is the sole fact-finder and has "discretion to determine the quality, character, and substance of the evidence and to draw reasonable inferences from the evidence." *City of Ashland*, 461 S.W.3d at 396 (quoting *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000)). "[T]he ALJ 'may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof.'" *Id.* On appeal,

> The function of further review of the WCB in the Court of Appeals is to correct the Board only where the the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. The function of further review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude.

*Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). The party with the burden of proof before the ALJ, and is successful, need only show that the decision is supported by substantial evidence. *French v. Rev-A-Shelf*, 641 S.W.3d 172, 178 (Ky. 2022). If the party with the burden of proof loses before the ALJ, then "the test is whether the evidence compelled a finding in his favor[.]" *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).

7

### III.  Analysis

#### A. The ALJ Complied with *City of Ashland*

*City of Ashland* delineates five-steps the ALJ must take prior to making an award for total disability. The ALJ must "determine if the claimant suffered a work-related injury[;]" "determine what, if any, impairment rating the claimant has[;]" determine the "permanent disability rating[;]" "determine that the claimant is unable to perform any type of work;" and finally, "determine that the total disability is the result of the work injury." *City of Ashland*, 461 S.W.3d at 396-97.

The Court of Appeals noted that only the fourth requirement is at issue in this case. Thus, regarding that particular step,

> An ALJ cannot simply state that he or she has reviewed the evidence and concluded that a claimant lacks the capacity to perform any type of work. The ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled.

*Id.* The factors which have previously been identified by this Court to consider include,

> the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities.

*Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000).

8

The ALJ's analysis in this case was pithy, and perhaps something more could have been said in order to clarify his reasoning to the parties and better facilitate review on appeal. But editorial preferences are one thing; legal sufficiency is another. We agree with the Court of Appeals' analysis below and adopt it as our own.

> The ALJ properly determined based on the medical proof that Lawrence would have to spend part of his day seated, would need breaks, and would need the opportunity to ice his ankle throughout the day. The ALJ next determined that Lawrence's age (fifty-eight), work experience (factory and shipping work), and education (a high school diploma) were not sufficient to create other work opportunities for him within his restrictions. The ALJ then determined that it was not realistic to believe that an employer would want to hire an employee for a factory job where the employee had to take multiple breaks throughout the day to ice his ankle.
>
> This analysis comports with [*City of Ashland v.] Stumbo.* It is clear from the ALJ's opinion that he determined that Lawrence would not be a good candidate for a more sedentary position that would fit within his restrictions due to his limited work history, age, and education, and the prospect of Lawrence finding factory work within his restriction was bleak. More extensive findings were not necessary. Therefore, the Board misconstrued what was necessary under *Stumbo* and erred in vacating and remanding for additional findings on this matter because there was evidence of sufficient probative value to support the ALJ's opinion.

Of particular note, the evidence in this case, though not cited by the ALJ, which supports the decision are Dr. Harreld's medical reports and restrictions, as well as Robert Tiell's vocational evaluation that determined Lawrence was 100% occupationally disabled. Even if it could be argued that Dr. Harreld's restrictions do not foreclose the proposition that Lawrence could work in some capacity, it is the ALJ's prerogative "to translate the lay and medical evidence into a finding of occupational disability." *Id.* at 52. There was substantial

9

evidence in the record to support the ALJ's decision. The Court of Appeals is affirmed.

### B. Error as to PPD Benefits

In his original Opinion, Award, and Order, the ALJ failed to mention PPD benefits at all. In his Order subsequent to Lawrence's petition for reconsideration on that issue, the ALJ opined,

> While I understand the Plaintiff was working with some pain I do not believe he was solely out of necessity. It was light duty, but not made up work. He was paid equal or greater wages. He hoped to make a full recovery. His actual disability began as outlined in the Opinion.

We are at a loss to understand why the ALJ, the Board, and the Court of Appeals found this analysis sufficient, but it is not sufficient. The Worker's Compensation statute states, "If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained." KRS 342.730(1)(c)(2). Obviously then, the return of Lawrence to work at equal or greater wages cannot preclude an award of PPD. Moreover, the ALJ stated Lawrence's "disability began as outlined in the Opinion." But we have previously stated that "an award of permanent partial disability under KRS 342.730(1)(b) is based solely on a finding that the injury resulted in a particular AMA impairment rating, with the amount of disability being determined by statute." *Roberts Bros. Coal Co. v. Robinson,* 113 S.W.3d 181, 183 (Ky. 2003). "Impairment and disability are not synonymous." *Id.* Thus, the

10

beginning of Lawrence's disability is irrelevant to whether he was entitled to PPD benefits. The issue is impairment; and while the ALJ did make a finding for an impairment rating of 8%, he nowhere makes a finding of fact as to the date this impairment became effective. The ALJ never made a finding of fact of the date Lawrence reached MMI. And, because impairment and disability are not synonymous, the 8% impairment rating the ALJ did find for the award of PTD benefits may not even be applicable to an award for PPD benefits. *Id.* Finally, before the ALJ, Lawrence "had to establish three elements to be entitled to PPD benefits . . . including: a statutory injury; an impairment rating pursuant to the *Guides;* and the ability to work, albeit with restrictions." *Greene v. Paschall Truck Lines*, 239 S.W.3d 94, 108 (Ky. App. 2007); KRS 342.0011(11)(b). Hence, the motivating factor for a worker's return to work— not solely out of necessity, as noted by the ALJ—is likewise irrelevant. The motivation for a worker's return to work is not mentioned in either KRS 342.0011(11)(b) nor in KRS 342.730(1)(b). Because the ALJ's reasoning, so far as this Court can discern, is based on several reasons not actually relevant as a matter of law to an award of PPD benefits, the ALJ's refusal to grant PPD benefits was clearly erroneous for overlooking and misconstruing controlling statutes. *Western Baptist*, 827 S.W.2d at 687.

What is available in the record does not allow for meaningful review of the particular question of PPD benefits, thus the Board ought to have remanded back to the ALJ for more specific findings of fact on that issue. *Tyron Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 238 (Ky. 2019). Instead, the Board

11

noted first, that no judicial authority exists authorizing the award of PPD benefits before PTD benefits; and second, it conducted its own analysis of the merits of the question based on when Lawrence reached MMI. But the Board is not a fact-finder. KRS 342.285(2). The failure of the ALJ to assign a date as to when MMI was reached, and to even explicitly adopt or decline to adopt an impairment rating for PPD benefits, precluded the Board from analyzing the question further. We consider the question of whether the Worker's Compensation statute authorizes an award of PPD benefits prior to an award of PTD benefits to be unripe at this time for adjudication. We note, however, that Lawrence has cited two cases from the Worker's Compensation Board approving of an award of PPD benefits followed by an award of PTD benefits, and we see no reason why the Board should not look to its own decisions for guidance when the courts have as yet been silent.

To be clear, if an appellate court has not definitively spoken on a particular question, then the proper analysis for an ALJ and the Board to conduct is to refer to the statutory text and determine whether the statute authorizes or precludes that which is being contended for. There is a hint of arbitrariness in an ALJ or the Board refusing an award simply by saying the courts have not spoken, we are helpless. Clearly, it is the job of an ALJ and the Board to apply the Worker's Compensation statute to the particular facts of a claimant's case. The lack of judicial authority on a particular question, standing alone, is not a sufficient reason to approve or deny an award. There must be an analysis of the statutory text and application of the text to the facts

12

of the claimant's case, as determined by the ALJ. The Court of Appeals is reversed.

## IV.    Conclusion

For the following reasons, we affirm in part, reverse in part, and remand to the ALJ for further consideration consistent with this opinion.

VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., sitting. All concur. Thompson, J., not sitting.


COUNSEL FOR KELLOGG'S:

Mark R. Bush
Samantha Steelman
Reminger Co., L.P.A.

COUNSEL FOR LESLIE LAWRENCE:

Stephanie Nicole Wolfinbarger
Cotton Wolfinbarger & Associates, PLLC

ADMINISTRATIVE LAW JUDGE:
Hon. Chris Davis

WORKER'S COMPENSATION BOARD:
Michael Wayne Alvey
Chairman